951 So.2d 860 (2006)
ROLLINS, INC., and Orkin Exterminating Company, Inc., Appellants,
v.
Mark BUTLAND and Christine Butland, Kris Cornett, and Maria Garcia, on behalf of themselves and others similarly situated, Appellees.
No. 2D05-368.
District Court of Appeal of Florida, Second District.
December 15, 2006.
Rehearing Denied January 2, 2007.
*865 Theodore R. Scarborough, Michael W. Davis, Constantine L. Trela, Jr., and Robert N. Hochman of Sidley Austin Brown & Wood LLP, Chicago, Illinois; and Douglas B. Brown of Rumberger, Kirk & Caldwell, P.A., Orlando, for Appellants.
David M. Caldevilla of de la Parte & Gilbert, P.A., Tampa, and J. Daniel Clark of Clark & Martino, P.A., Tampa, for Appellees.
Mark H. Ruff of Alvarez, Sambol, Winthrop & Madson, P.A., Orlando, for Amicus Curiae Florida Pest Management Association, Inc.
WALLACE, Judge.
Mark Butland, Christine Butland, Kris Cornett, and Maria Garcia (the Appellees) filed a class action complaint in the circuit court against Rollins, Inc., and Orkin Exterminating Company, Inc. (the Appellants), for multiple claims arising from Orkin's contractual undertakings related to the control of subterranean termites. The Appellees moved for class certification. The circuit court certified a class and one subclass under Florida Rule of Civil Procedure 1.220(b)(2) and (b)(3). On this appeal, the Appellants challenge the order granting the Appellees' motion for class certification.[1] Because we conclude that the Appellees' claims did not meet the requirements for class certification under either subsection (b)(2) or subsection (b)(3) of rule 1.220, we reverse the order granting class certification.

I. THE APPELLEES' CLAIMS
Each of the Appellees entered into a "Subterranean Termite Agreement" with Orkin (the Contract). In the Contract, Orkin agrees to treat the customer's property for subterranean termites in exchange for the payment of an initial fee. Thereafter, the Contract is renewable annually upon payment of a renewal fee. The Contract *866 provides for reinspections of the customer's property "when Orkin believes it necessary, or annually if [the customer] request[s] it." If an infestation of subterranean termites is found during the term of the Contract, Orkin undertakes to re-treat the property at no additional cost to the customer. The Contract includes various disclaimers, including a disclaimer of any obligation "to repair any damage to [the customer's] building or its contents caused by an infestation of Subterranean Termites." The Appellees each claim that they sustained extensive termite damage to their homes caused by Orkin's deficient performance of its obligations under the Contract.
The allegations of the Appellees' complaint against the Appellants are detailed and extensive. The complaint is 45 pages long and contains over 166 paragraphs. In the class certification order, the circuit court summarized the crux of the dispute as follows:
a. Orkin, through alleged deceptive and unfair business practices at the control and direction of its parent, Rollins, is alleged to have entered into Standard Termite Contracts with the [Appellees] and the Orkin Termite Class that are void ab initio because such contracts are alleged to be illegal and in violation of Florida's Pest Control Act, chapter 482, and Florida's Deceptive and Unfair Trade Practices Act, Florida Statutes, chapter 501;
b. [Through] its alleged deceptive and unfair trade practices, Orkin, at the control and direction of its parent, Rollins, is alleged to have taken money from [the Appellees] and the Orkin Termite Class, both through initial payments and annual renewals, without providing agreed upon services for inspection and treatment of subterranean termites, most specifically annual reinspections in exchange for customers' annual renewal payments; and
c. [Through] its alleged deceptive and unfair trade practices, Orkin, again at the control and direction of Rollins, is alleged to have disseminated to [the Appellees] and the Orkin Termite Class standardized advertising brochures used by its sales representatives that are alleged to contain false and non-factual statements in violation of Florida law.
Based on this wide-ranging dispute, the Appellees' complaint asserted six claims against the Appellants: deceptive and unfair trade practices (count I); misleading advertising (count II); Florida RICO-criminal racketeering (count III); breach of contract (count IV); unjust enrichment (count V); and declaratory and injunctive relief relating to the validity of the disclaimers in the Contract under section 482.227, Florida Statutes (count VI).
In their complaint, the Appellees sought two distinct types of damages: (1) actual damages for the payments made to Orkin for the initial treatment fee and the annual renewal fees by the Appellees and the putative class members and (2) property damages incurred by the Appellees and the putative class members as a result of damage to their residences caused by subterranean termites. It is important to note that membership in the proposed class was not limited to customers who sustained damage to their residences as a result of an infestation of subterranean termites. For members of the putative class who had sustained no such damage, the recovery of damages  if any  would be limited to the first category of damages sought.

II. THE CLASS CERTIFICATION ORDER
This is the second appearance of this matter before this court on the issue of class certification. We reversed an earlier order granting class certification and remanded *867 for further proceedings because the order did not contain the factual and legal findings required by rule 1.220(d)(1). Rollins, Inc. v. Butland, 852 So.2d 895 (Fla. 2d DCA 2003). On remand, the circuit court conducted a three-day hearing on the class certification issue. After the hearing, the circuit court entered the class certification order under review and a separate case management order. The class certification order is 58 pages long and contains over 245 paragraphs with findings of fact and conclusions of law. The current findings of fact and conclusions of law are sufficient to comply with the requirements of the rule.
In the order under review, the circuit court certified an "Orkin Termite Class" and an "Orkin RICO Subclass." The Orkin Termite Class is defined as "all Orkin customers who either entered into a lifetime renewable subterranean termite contract (without an arbitration provision), referenced herein as the `Standard Termite Contract' or renewed that contract after March 9, 1995[,] through the present." The Orkin RICO Subclass is defined as "all Orkin customers who are members of the `Orkin Termite Class' defined above, and were induced to and entered into a Standard Termite Contract based on Orkin's misleading advertisements and representations that violate Florida Statutes, sections 772.104, 817.06, and 817.41."[2] The circuit court certified both the Orkin Termite Class and the Orkin RICO Subclass under rule 1.220(b)(2) and (b)(3). The certification order directed class counsel to submit a proposed class notice for the circuit court's approval within thirty days. The parties estimated the number of members of the putative class at 65,000.

III. THE APPELLANTS' ARGUMENTS
The Appellants challenge the class certification order on four grounds. First, because individual issues predominate over common issues, the putative class litigation is unmanageable and does not meet the criteria for class certification under rule 1.220(b)(3). Second, the named class representatives are inadequate to represent the class because their claims are time-barred and because they have divergent interests from other members of the putative class. Third, the case management order violates the Appellants' right to a jury trial. Fourth, the circuit court abused its discretion by certifying classes under rule 1.220(b)(2) that are seeking money damages. We need address only the first and fourth grounds.

IV. THE REQUIREMENTS FOR CLASS CERTIFICATION
Before a class action can be certified, the trial court must conduct a rigorous analysis to determine that the elements of rule 1.220, the class action rule, have been met. See Ortiz v. Ford Motor Co., 909 So.2d 479, 480 (Fla. 3d DCA 2005). First, the trial court must conclude that a plaintiff has established the prerequisites to class representation described in rule 1.220(a). Under rule 1.220(a), the threshold requirements for class action representation are that (1) the members of the class are so numerous that separate joinder of each member is impracticable, (2) *868 the claim raises questions of law or fact common to each member of the class, (3) the claim of the representative party is typical of the claim of each member of the class, and (4) the representative party can fairly and adequately protect and represent the interests of other members of the class. Id. "These requirements are commonly referred to as the numerosity, commonality, typicality, and adequacy of representation elements of class certification." Marco Island Civic Ass'n v. Mazzini, 805 So.2d 928, 930 (Fla. 2d DCA 2001).
In addition to satisfying rule 1.220(a), a plaintiff must also satisfy one of the three subdivisions of rule 1.220(b). The subdivisions relevant to this case are contained in subsections (b)(2) and (b)(3). Rule 1.220(b)(2) requires that the party opposing the class has acted or refused to act on grounds applicable to all class members, thereby making final injunctive or declaratory relief appropriate. Rule 1.220(b)(3) requires that common questions of law or fact predominate over any individual questions of the separate members and the class action must be superior to other available methods for a fair and efficient adjudication of the controversy. The rule 1.220(b)(3) requirement parallels the commonality requirement under rule 1.220(a) because both require that common questions exist, but the predominance requirement in subsection (b)(3) "is more stringent since common questions must pervade." Wyeth, Inc. v. Gottlieb, 930 So.2d 635, 639 (Fla. 3d DCA 2006).
The party moving to certify the class has the burden of proving the propriety of class action status. See Marco Island, 805 So.2d at 930. There must be an evidentiary basis to support an order certifying a class when the nonmoving party contests class certification and it is not clear from the pleadings that a lawsuit qualifies for class action status. See Ernie Haire Ford, Inc. v. Gilley, 903 So.2d 956, 959 (Fla. 2d DCA 2005). Although a trial court will generally be required to conduct an evidentiary hearing to determine whether to certify a class, the trial court's proper focus is on whether the requirements of rule 1.220 have been met and not on whether the moving party will prevail on the merits. See Samples v. Hernando Taxpayers Ass'n, 682 So.2d 184, 185 (Fla. 5th DCA 1996) (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)).[3]
A "determination that a case meets the requirements of a class action is . . . within the trial court's discretion and will be reversed on appeal only if an abuse of discretion is shown." Bouchard Transp. Co. v. Updegraff, 807 So.2d 768, 771 (Fla. 2d DCA 2002) (citing Marco Island, 805 So.2d 928).

V. DISCUSSION
A. Introduction
The circuit court certified the Orkin Termite Class and the Orkin RICO Subclass under both rule 1.220(b)(2) and (b)(3) on all six of the claims alleged in the Appellees' complaint. However, only the claim asserted in Count VIwhich seeks declaratory and injunctive reliefis a candidate for certification under rule 1.220(b)(2). The remaining claims all seek money damages and should be evaluated for certification under rule 1.220(b)(3). In the discussion which follows, we will first consider the claims asserted in counts I through V under rule 1.220(b)(3) and then consider the claim asserted in count VI under rule 1.220(b)(2).
*869 B. Certification Under Rule 1.220(b)(3)
1. Deceptive and Unfair Trade Practices (Count I)
a. The Elements of a Claim for Damages Under FDUTPA
In count I of their complaint, the Appellees assert a claim for damages against the Appellants under Florida's Deceptive and Unfair Trade Practices Act (FDUTPA), sections 501.201-.213, Florida Statutes.[4] FDUTPA is intended to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2). See also Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc., 693 So.2d 602, 605-06 (Fla. 2d DCA 1997) (discussing the purpose of FDUTPA in light of its legislative history). A deceptive practice is one that is "likely to mislead" consumers. Davis v. Powertel, Inc., 776 So.2d 971, 974 (Fla. 1st DCA 2000). An unfair practice is "one that `offends established public policy' and one that is `immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" Samuels v. King Motor Co. of Fort Lauderdale, 782 So.2d 489, 499 (Fla. 4th DCA 2001) (quoting Spiegel, Inc. v. Fed. Trade Comm'n, 540 F.2d 287, 293 (7th Cir.1976)).
FDUTPA affords civil private causes of action for both declaratory and injunctive relief and for damages. With respect to the recovery of damages, FDUTPA provides:
In any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs as provided in s. 501.2105. However, damages, fees, or costs are not recoverable under this section against a retailer who has, in good faith, engaged in the dissemination of claims of a manufacturer or wholesaler without actual knowledge that it violated this part.
§ 501.211(2). Thus a consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. See Chicken Unlimited, Inc. v. Bockover, 374 So.2d 96, 97 (Fla. 2d DCA 1979); Gen. Motors Acceptance Corp. v. Laesser, 718 So.2d 276, 277 (Fla. 4th DCA 1998); Macias v. HBC of Fla., Inc., 694 So.2d 88, 90 (Fla. 3d DCA 1997). The standard for determining the actual damages recoverable under FDUTPA is well-defined in the case law:
"[T]he measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties. [. . .] A notable exception to the rule may exist when the product is rendered valueless as a result of the defectthen the purchase price is the appropriate measure of actual damages."
Rollins, Inc. v. Heller, 454 So.2d 580, 585 (Fla. 3d DCA 1984) (quoting from Raye v. Fred Oakley Motors, Inc., 646 S.W.2d 288, 290 (Tex.App.1983)).
For purposes of recovery under FDUTPA, "actual damages" do not include consequential damages. See Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati, 715 So.2d 311, 314 (Fla. 4th DCA 1998). FDUTPA's bar on the recovery of consequential damages precludes the recovery *870 of the costs to repair a building resulting from a deficient inspection for termites. See Orkin Exterminating Co. v. Petsch, 872 So.2d 259, 263 (Fla. 2d DCA 2004); Urling v. Helms Exterminators, Inc., 468 So.2d 451, 454 (Fla. 1st DCA 1985). Similarly, the recovery afforded under FDUTPA does not include diminution in value or stigma damages caused by termite damage. See Orkin Exterminating Co. v. DelGuidice, 790 So.2d 1158, 1162 (Fla. 5th DCA 2001).
b. The Appellees' FDUTPA Damages Claim
The scope of the Appellees' claim for damages under FDUTPA against the Appellants is extremely ambitious. The Appellees do not base their FDUTPA damages claim on a single act or practice. Instead, they allege that the Appellants have committed no less than fourteen separate deceptive or unfair practices. The Appellees' allegations against the Appellants on the FDUTPA damages claim may be summarized as follows:
 The various disclaimers in the Contract were not in conspicuous type on the face of the contract and improperly attempted to limit the termite protection guarantee, all in violation of section 482.227(2), Florida Statutes.
 The Appellants falsified reinspection documents and forged reinspection tickets and other treatment records.
 The Appellants failed to disclose termite infestation to customers.
 The Appellants engaged in false and misleading advertising.
 The Appellants failed to inspect customers' homes and falsified the company records to indicate that inspections had been performed when they had not.
 The Appellants misused the word "guarantee" in the Contract in violation of section 482.227(1), Florida Statutes.
The circuit court devoted most of its attention in the certification order to the allegations concerning the various disclaimers in the Contract. Nevertheless, the circuit court certified the class based on all fourteen of the separate alleged violations. Thus we must consider whether certification was appropriate based on all of the alleged violations, not just those relating to the disclaimers.
c. Predominance Analysis
(1) The Applicable Test for Assessing Predominance
Our initial task in reviewing the Appellants' challenge to class certification on the FDUTPA damages claim under rule 1.220(b)(3) is to determine if common questions predominate over individual questions with respect to the matters to be proved at trial. In approaching this task, we are guided by this court's decision in Humana, Inc. v. Castillo, 728 So.2d 261, 266 (Fla. 2d DCA 1999), where we said:
To certify a class, rule 1.220(b) requires not only that common questions exist, but that those common questions predominate over individual questions. Rule 1.220 also requires a class action to be manageable and superior to other proceedings. To determine if the requirements of Rule 1.220 have been met, a trial court must envision how a class action trial would proceed.
Under this analysis, the trial court must determine whether the purported class representatives can prove their own individual cases and, by so doing, necessarily prove the cases for each one of the thousands of other members of the class. If they cannot, a class should not be certified.
If individual questions predominate, a class action is unmanageable. Id.
*871 Our analysis of the predominance question is necessarily based on the elements of the Appellees' FDUTPA damages claim. See Latman v. Costa Cruise Lines, N.V., 758 So.2d 699, 702 (Fla. 3d DCA 2000). To promote clarity in our analysis, we will first address this issue in the context of the proposed proof of deceptive acts and unfair practices and then address the same issue as it relates to the proposed proof of causation and damages.
(2) The Proposed Proof of Deceptive Acts and Unfair Practices
We begin our examination of the certification of the FDUTPA damages claim with the proposed proof of deceptive acts and unfair practicesthe first leg of the FDUTPA liability tripod. In the circuit court's analysis of the predominance question, it devoted most of its attention to the issues of Orkin's alleged misuse of the word "guarantee" and the validity of the various disclaimers in the Contract. Because these issues concern questions of law arising from the terms of the Contract, they are arguably common to all members of the putative class. However, the Appellees' FDUTPA damages claim is not limited to legal issues arising from the terms of the Contract. On the contrary, the FDUTPA damages claim addresses numerous issues relating to the Appellants' alleged misdeeds in inducing customers to choose Orkin for pest control services and in the performance or nonperformance of those services for individual customers.
A review of the fourteen separate violations of FDUTPA alleged in the complaint demonstrates that the Appellees cannotby proving their own cases prove the cases for each of the thousands of other members of the putative class as required by Humana. For example, proof that Orkin failed to inspect the Butlands' home and falsified company records to indicate that the inspections had been performed would not prove that Orkin had failed to inspect the home of any other member of the putative class. Proof that Orkin forged Kris Cornett's name to a reinspection ticket would not prove the forgery of the name of any other class member to a reinspection ticket. And proof that Orkin failed to disclose a termite infestation to Maria Garcia would not prove that Orkin discovered and failed to disclose a termite infestation in the home of any other member of the putative class. In short, the adjudication of the Appellees' FDUTPA damages claim would require multiple factual determinations that are unique to each member of the class. The need to resolve these multiple individual factual issues overwhelms any common legal issues relating to the provisions of the Contract. Because individual questions predominate, the Appellees' FDUTPA damages claim is unmanageable as a class action. See Humana, 728 So.2d at 266; St. Joe Co. v. Leslie, 912 So.2d 21, 24 (Fla. 1st DCA 2005); Terry L. Braun, P.A. v. Campbell, 827 So.2d 261, 265 (Fla. 5th DCA 2002).
(3) The Proposed Proof of Causation and Damages
We turn now to an examination of the predominance issue in the context of the second and third legs of the FDUTPA liability tripod  causation and damages. In the certification order, the circuit court ignored the element of causation and treated the element of damages in a cursory fashion as follows:
227. . . . [I]n the present case, many damages issues can be handled on a class-wide basis.
228. For example, [the Appellees] contend, and the Court finds based on the evidence submitted to date, that [the Appellants] have all the information necessary to establish total damages in *872 their financial records, showing the amount of money received both initially and annually from payments of renewal premiums. . . .
229. Thus, the recovery for the class as a whole will be fixed through common proof. Thereafter, the calculation of sums due to individual class members can be determined using techniques employed in other large class actions, such as questionnaires or proofs of claims. In such circumstances, once the total recovery is fixed, the need for individual mini-trials or any further defense involvement is eliminated.
Thus the circuit court concluded that the amount of damages due to each member of the putative class could be determined by calculating the total amount paid by each customer to Orkin for the initial treatment and each annual renewal of the Contract. The circuit court seems to have been of the view that upon proof by the Appellees that the Appellants had committed deceptive acts or unfair practices, each putative class member would be entitled to a damages award measured by a refund of all monies he or she had previously paid to Orkin.
In their brief filed in this court, the Appellees urge a slightly different approach to the issues of causation and damages. The Appellees' theory of causation and damages focuses on the "diminished market value" of the putative class members' individual contracts with Orkin. The Appellees' argument on this point is as follows:
[I]t is not necessary for [the Appellees] to prove that every class member did not receive an annual reinspection or some other form of services they paid for, or that every class member relied on false advertising. Rather, [the Appellees] merely need to demonstrate that as a result of these common schemes and business practices, the contracts have diminished market value. . . .
Proof of such pervasive schemes will also establish [the Appellants] have violated, are violating, and/or are otherwise likely to violate FDUTPA. . . .
. . . .
In sum, [the Appellees] will demonstrate the existence of company-wide pervasive common schemes and business practices of false advertising and collecting money without rendering services. If so, the entire class will be entitled to monetary, declaratory, and/or injunctive relief under FDUTPA.
At oral argument, counsel for the Appellees informed us that proof of the diminished market value of the individual customer contracts with Orkin could be made by expert witness testimony.
In order for the circuit court to certify the class on the FDUTPA damages claim, the Appellees had to demonstrate the existence of a "reasonable methodology for generalized proof of class-wide impact and damages." Execu-Tech Bus. Sys. v. Appleton Papers, Inc., 743 So.2d 19, 22 (Fla. 4th DCA 1999); see also Green v. McNeil Nutritionals, LLC, 2005 WL 3388158 (Fla. 4th Cir.Ct. Nov. 16, 2005) (denying motion to certify class on FDUTPA claim where a common right of recovery based on the same essential facts did not exist). In this case, such generalized or class-wide proof does not exist for either causation or damages.
The Appellees claim that the Appellants are guilty of no less than fourteen separate deceptive acts and unfair practices. Thus, to the extent that any member of the putative class sustained actual damages recoverable under FDUTPA, those damages could be the result of any one or a combination of the fourteen alleged violations. A different violation or combination of violations might be the cause of loss to another member of the putative class. Thus the number of possible causative factors *873 and combinations thereof for each of 65,000 putative class members is quite large. Under these circumstances, class-wide proof of causation is impossible, and individual issues are overwhelmingly predominant.
On the question of damages, similar considerations apply. Neither the circuit court's refund approach nor the Appellees' diminished market value theory provides a methodology for class-wide proof of damages under the facts of this case. After Orkin completed its initial treatment of the customer's property for subterranean termites, the Contract became a conditional service agreement. Orkin's contractual undertaking was limited to re-treating the customer's building if a reinfestation of subterranean termites occurred.[5] Absent a reinfestation, Orkin had no obligation to do anything except to periodically inspect the property.
The Appellees claim to have sustained actual loss, e.g., termite damage to their homes. We assume that some members of the putative class would make similar claims. Nevertheless, it is certain that many members of the putative class did not experience any actual loss resulting from any deficient performance by Orkin or from a reinfestation of subterranean termites. The members of the putative class who experienced no actual loss have no claim for damages under FDUTPA. See Macias, 694 So.2d 88; Himes v. Brown & Co. Sec. Corp., 518 So.2d 937 (Fla. 3d DCA 1987). To be sure, some of the deceptive acts and unfair practices alleged by the Appellees might constitute breaches of contract for which a customer who experienced no actual loss might recover nominal damages in a separate action on the Contract. But FDUTPA does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment. See In re Crown Auto Dealerships, Inc., 187 B.R. 1009, 1018-19 (Bankr. M.D.Fla.1995); Macias, 694 So.2d at 90; Maroone Chevrolet, Inc. v. Nordstrom, 587 So.2d 514, 519 (Fla. 4th DCA 1991). It follows that some members of the putative class have sustained an actual loss for which recovery could be sought under FDUTPA, while many others have not. For this reason, there is no class-wide proof of damages available on the FDUTPA damages claim. Thus individual issues also predominate over common questions on the third leg of the FDUTPA liability tripod.
d. The Impermissibility of Proof by "Pattern and Practice"
The circuit court recognized the hurdle these individual issues of fact posed for class certification on the Appellees' FDUTPA damages claim. Its solution to the problem was to obviate the need for individual proof and instead authorize proof of the Appellants' "alleged pattern and practice of unfair and deceptive acts in taking money from its customers without rendering services." In other words, the circuit court proposed to allow the Appellees to prove the FDUTPA damages claim for the class by presenting proof of the Appellants' alleged common schemes and business practices.
We reject the circuit court's solution to the need for class-wide proof. In a case such as this, authorizing class-wide proof to be made based on alleged company-wide pervasive schemes and business practices is not only inconsistent with established Florida precedent, but it also has the potential to deny the Appellants substantive *874 due process of law. Under the substantive law applicable to the FDUTPA damages claim, each member of the putative class must establish that the Appellants committed a deceptive act or unfair practice that caused their actual loss. Under the circumstances present here, collective proof cannot satisfy the class members' burden. However, if the Appellees are permitted to establish the putative class members' claims by proof of common schemes or patterns of behavior, the Appellants will be unable to defend against individual claims where there may be no liability. By any standard, this would amount to a violation of substantive due process of law. See Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331 (4th Cir.1998) (holding that class action defendant may have been denied a fair trial where it was forced to defend against a "perfect plaintiff" pieced together for litigation); Cheatwood v. Barry Univ., Inc., 2001 WL 1769914, at *17 n. 54 (Fla. Cir.Ct. Dec.26, 2001) ("[T]he Universities have a constitutional right to require that each putative class member prove their alleged contract, negligent misrepresentation, statutory and other claims within a constitutional format. Such a format includes individual demonstrations of the substantive elements of Plaintiffs' claims, including causation and damages."). See generally Markham R. Leventhal, Class Actions: Fundamentals of Certification Analysis, 72 Fla. B.J. 10, 14-16 (May 1998) (discussing why the trial of an improperly certified class action is likely to violate a defendant's due process rights).
The Supreme Court of Florida has authorized class actions by virtue of its rule-making authority under the Florida Constitution. Art. V, § 2(a), Fla. Const. However, the court's rule-making authority "is limited to rules governing procedural matters and does not extend to substantive rights." Boyd v. Becker, 627 So.2d 481, 484 (Fla.1993). It follows that Florida courts may not certify a class action under rule 1.220 if the effect of class certification is to deprive one or more of the parties of their right to substantive due process of law.
Arguments for substituting proof of a pattern of conduct or a common scheme for proof of individual liability in the trial of a class action generally rest on the justifications of "administrative convenience" and "fairness." Neither of these justifications supports the approach to class-wide proof adopted by the circuit court in this case. Although a trial court confronting a massive class action may find it tempting to allow proof of "patterns" and "common schemes" to paper over the dissimilarities attendant to individual claims, considerations of administrative convenience do not trump the class action defendant's right to due process of law. See Cheatwood, 2001 WL 1769914, at *17. See generally Allan Erbsen, From "Predominance" to "Resolvability": A New Approach to Regulating Class Actions, 58 Vand. L.Rev. 995, 1012-14 (2005); Mark Moller, The Rule of Law Problem: Unconstitutional Class Actions and Options for Reform, 28 Harv. J.L. & Pub. Pol'y 855, 875-76 (2005).
The argument for authorizing proof by "patterns" and "common schemes" based on considerations of fairness may be stated as follows: The ordinary standards concerning rules of evidence, burdens of proof, or proof of the elements of a cause of action must be relaxed in the class action context. Otherwise, the high cost of pursuing individual claims will leave the individual members of the putative class without a remedy. Like the argument from administrative convenience, the argument based on considerations of fairness ignores the class action defendant's substantive rights. But the fairness argument suffers from the additional defect of *875 circularity. It assumes what remains to be proved: that the individual members of the putative class have a right to a recovery in the first place.[6]
e. Comparison to Other FDUTPA Claims Where Class Certification Was at Issue
The extremely ambitious scope of the Appellees' FDUTPA damages claim probably made it inevitable that they would propose to establish the claims of the putative class members by presenting generalized proof based on patterns and common schemes. Nevertheless, rule 1.220(b)(3) did not authorize the circuit court to adopt the Appellees' proposal and thereby to relax other procedural rules or to alter the Appellants' substantive rights. We recognize that our sister district courts have approved the certification of other FDUTPA claims as class actions in several cases. However, the Florida appellate decisions in which the class certification of FDUTPA claims has been approved have involved either allegations of a single defect in a standard consumer product or a single improper charge imposed uniformly on all consumers purchasing the product or service at the point of sale. See, e.g., Turner Greenberg Assocs., Inc. v. Pathman, 885 So.2d 1004 (Fla. 4th DCA 2004) (undisclosed profit in "freight/insurance" collected by high-end furniture retailer); Powertel, 776 So.2d 971 (seller of cellular telephone failed to disclose to its subscribers that telephone had been programmed to work only with the seller's wireless communications service); Latman, 758 So.2d 699 (cruise line collected "port charge" and passed through only a portion of the port charges to port authorities and kept the remainder for itself); W.S. Badcock Corp. v. Myers, 696 So.2d 776 (Fla. 1st DCA 1996) (collection of charge for unnecessary "non-filing" insurance). In these cases, each of the consumers was treated alike, and individual issues about liability for alleged violations of FDUTPA did not arise.
Here, the Appellees' FDUTPA damages claim arises in the context of a complex contractual relationship. The Contract is a service agreement. In it, Orkin undertakes not only to provide initial treatment for subterranean termites but also to perform reinspection services. If an infestation of subterranean termites is found during the term of the Contract, Orkin agrees to re-treat the customer's property at no additional cost. The contract is renewable annually upon payment of a renewal fee. Thus the agreement between Orkin and the customer could theoretically continue for as long as the customer paid the annual renewal fee and Orkin remained in business. The class includes all Orkin customers who have entered into the Contract or renewed it after March 9, 1995, "through the present." Consequently, the period of time Orkin's performance of the Contract is under review for each of the estimated 65,000 members of the putative class could encompass many years.[7] The alleged deceptive acts and unfair practices could occur prior to or upon entering into the individual agreements, on renewal, or at any time during the period of the contractual relationship between Orkin and the customer. For these reasons, the Appellees' broad spectrum of asserted FDUTPA violations would require consideration at trial of all aspects of the putative class members' contractual relationship with Orkin. See Williams v. Ford Motor Co., 192 F.R.D. 580, 584 (N.D.Ill.2000) (stating that all phases of alleged deception relative to *876 sale and performance of automotive extended service plan had to be considered in assessing motion to certify class on claim for alleged violation of Illinois Consumer Fraud Act). Furthermore, the extent of the loss experienced by each customer caused by one of the alleged unfair or deceptive acts could vary widely. For some customers, such losses might involve the repair of extensive structural damage to a home or the cost of a re-treatment for subterranean termites. Other customers might sustain no loss at all.
In cases such as this one involving complex contractual arrangements with extended periods of performance, Florida courts have generally declined to approve class certification of FDUTPA claims. See, e.g., Chase Manhattan Mortgage Corp. v. Porcher, 898 So.2d 153 (Fla. 4th DCA 2005) (alleged wrongful assessment of late fees on monthly mortgage payments received on time); Earnest v. Amoco Oil Co., 859 So.2d 1255 (Fla. 1st DCA 2003) (termination of distribution of petroleum products in Leon County to independent distributors and/or station owners commonly known as "jobbers"); Terry L. Braun, P.A., 827 So.2d 261 (treatment by unlicensed dental practitioner); Execu-Tech, 743 So.2d 19 (consumer claim for conspiracy to fix and fixing the price of jumbo roll thermal fax paper sold by manufacturers to middlemen and retailers). Here, cases such as Powertel and Latman are inapposite. The circuit court's order certifying the class in this case was inconsistent with prior Florida decisions involving similar FDUTPA claims.
2. Breach of Contract and Unjust Enrichment (Counts IV And V)
a. The Elements of Claims for Breach of Contact and for Unjust Enrichment
The elements of an action for breach of contract are: (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach. See Knowles v. C.I.T. Corp., 346 So.2d 1042, 1043 (Fla. 1st DCA 1977). In addition, in order to maintain an action for breach of contract, a claimant must also prove performance of its obligations under the contract or a legal excuse for its nonperformance. See Old Republic Ins. Co. v. Von Onweller Constr. Co., 239 So.2d 503, 505 (Fla. 2d DCA 1970); Marshall Constr., Ltd. v. Coastal Sheet Metal & Roofing, Inc., 569 So.2d 845, 848 (Fla. 1st DCA 1990). The essential elements of a claim for unjust enrichment are: (1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof. See Swindell v. Crowson, 712 So.2d 1162, 1163 (Fla. 2d DCA 1998).
b. The Appellees' Claims for Breach of Contract and for Unjust Enrichment
The Appellees' claim for breach of contract alleges that Orkin breached the Contract "by failing to inspect and treat their homes in order to control and eradicate termite infestation." In their claim for unjust enrichment, the Appellees allege that the Appellants "received income to which they had no legal right and were thereby enriched at [the Appellees'] expense."
c. Predominance Analysis
The individual issues concerning liability and damages that make class certification on the FDUTPA damages claim inappropriate would also predominate in a trial of the contract and unjust enrichment claims. Indeed, the contract and unjust enrichment claims would require the consideration *877 of additional individualized questions not at issue on the FDUTPA damages claim. The Contract imposes various obligations on the customers. Each class member would be required to prove at trial his or her performance of these obligations, e.g., making the building or premises available for Orkin's inspection. The predominance of individual issues over common questions makes class certification on the breach of contract and unjust enrichment claims inappropriate under rule 1.220(b)(3). See Hutson v. Rexall Sundown, Inc., 837 So.2d 1090 (Fla. 4th DCA 2003) (affirming denial of certification of unjust enrichment claim for alleged deceptive labeling and point-of-purchase advertising for calcium supplements because of predominance of individualized fact issues); Stone v. CompuServe Interactive Servs., 804 So.2d 383 (Fla. 4th DCA 2001) (affirming denial of class certification of breach of contract claim based on alleged deficient performance of contract for payment of $400 rebate upon signing up for three years of internet service because each class member's history was unique and obligor's liability for deficient performance could not be adjudicated by looking to the class as a whole).
3. The Misleading Advertising and Florida RICO Claims (Counts II and III)
a. The Appellees' Claims for Misleading Advertising and Florida RICO-Racketeering
In count II of the complaint, the Appellees alleged that the Appellants had disseminated misleading advertising before the general public of the State of Florida in violation of section 817.41(1), Florida Statutes. For the redress of this alleged violation of the statute, the Appellees are pursuing a civil remedy. A person prevailing in a civil action for a violation of the statute may recover costs, including reasonable attorney's fees, and punitive damages in addition to the actual damages proven. § 817.41(6), Fla. Stat. In count III of the complaint, the Appellees pleaded a racketeering claim based on the Appellants' alleged misleading advertisements in violation of section 817.41(1). See §§ 772.104, 817.06. The circuit court certified the class on both of these claims.
b. The Requirement to Prove Fraud
Misleading advertising is a particularized form of fraud. In order to establish their claim for misleading advertising under section 817.41(1) and the related racketeering claim, the Appellees will be required to prove each of the elements of common law fraud in the inducement, including reliance and detriment. See Joseph v. Liberty Nat'l Bank, 873 So.2d 384, 388 (Fla. 5th DCA 2004); Vance v. Indian Hammock Hunt & Riding Club, Ltd., 403 So.2d 1367, 1370 (Fla. 4th DCA 1981). Consequently, Florida case law concerning the suitability of fraud claims for certification as class actions guides our review of the circuit court's decision to certify the class on the misleading advertising and racketeering claims.
c. Claims for Fraud Based on Individual Contracts and Class Actions
The leading case in Florida on the certification of actions for fraud based on individual contracts as class actions is Lance v. Wade, 457 So.2d 1008 (Fla.1984). In Lance, our supreme court reaffirmed its prior decisions holding that claims for fraud based on individual contracts cannot be the basis for a class action. Id. at 1009. After reviewing the elements of a cause of action for fraud, the court explained the rationale for its ban on certifying class actions based on separate contracts:

*878 In a situation such as this, involving multiple contractual sales, each of the parties has his own separate and distinct contract and must make a determination as to which terms are important to him. What one purchaser may rely upon in entering into a contract may not be material to another purchaser.
Id. at 1011. In Humana, this court applied Lance in deciding to reverse an order certifying a class action for alleged misrepresentations or failure to disclose information to potential enrollees in a health maintenance organization. Humana, 728 So.2d at 266. Here, each of the 65,000 members of the putative class either has or once had a separate contract with Orkin. Thus certification of the misleading advertising and racketeering claims was error under both Lance and Humana.
d. Analysis of the Cases Relied on by the Circuit Court
In finding that the misleading advertising and racketeering claims qualify for class certification, the circuit court relied primarily on two decisions: Broin v. Philip Morris Cos., 641 So.2d 888 (Fla. 3d DCA 1994), and Klay v. Humana, Inc., 382 F.3d 1241 (11th Cir.2004). Neither of these decisions supports the circuit court's order.
In Broin, thirty nonsmoking flight attendants filed a class action against several tobacco companies on their own behalf and on behalf of a class consisting of approximately 60,000 current and former flight attendants employed by various airlines in the United States, who were continuously forced to inhale secondhand cigarette smoke in airplane cabins. 641 So.2d at 889. The class action complaint sought recovery of damages for diseases and disorders allegedly caused by the flight attendants' exposure to secondhand cigarette smoke. Id. The class action complaint was predicated on multiple theories, including fraud and conspiracy to commit fraud. Id. The circuit court granted the tobacco companies' motion to dismiss all class allegations in the complaint. Id.
On appeal, the Third District reversed the circuit court's order of dismissal and remanded the case to the circuit court with instructions to reinstate the class allegations. The district court distinguished Lance and similar decisions as follows:
Contrary to defendants' assertions, dismissal is not required under Lance v. Wade, 457 So.2d 1008 (Fla.1984), K.D. Lewis Enter. Corp., Inc. v. Smith, 445 So.2d 1032 (Fla. 5th DCA 1984), Mathieson v. General Motors Corp., 529 So.2d 761 (Fla. 3d DCA 1988), or [Cohen v.] Camino Sheridan[, Inc., 466 So.2d 1212 (Fla. 4th DCA 1985)]. These cases do not dictate affirmance; they merely demonstrate Florida's aversion to class action treatment for breach of contract or fraud claims. Lance held that fraud on individual contracts for the purchase of home lots could not be the basis for class action. The Lance court reasoned that class action treatment was inappropriate under those circumstances because "[w]hat one purchaser may rely upon in entering into a contract may not be material to another purchaser." Lance, 457 So.2d at 1011. The court in K.D. Lewis Enter. Corp., held that tenants in an apartment complex could not bring a class action against the landlord because the landlord's omissions and noncompliance varied from tenant to tenant. The homeowners' class action complaint against the home builder in Camino Sheridan was dismissed because it did not allege that the house roofs or contracts in question were similar. In the present case, no discrepancies analogous to those inherent in the cited fraud and contract cases support the trial court's erroneous dismissal.
Id. at 891. Concerning the fraud claims, the Third District reasoned that the trial *879 of the case would emphasize issues applicable to the class as a whole. Id. The common issues would include whether the tobacco companies' behavior constituted an intent to defraud the class members and whether they conspired to conceal the dangers of secondhand smoke. Id.
Broin does not support the circuit court's order in this case. The Broin court expressly distinguished the factual situation presented to it from cases such as this one involving a claim of fraud arising from a contract. 641 So.2d at 891. As the Fifth District has noted in a similar context, "[i]n Broin, the class members were passive inhalers of secondhand smoke. They never even used the defendants' products. Individualized reliance was irrelevant." Hoechst Celanese Corp. v. Fry, 753 So.2d 626, 628 (Fla. 5th DCA 2000) (en banc). Here, the class claims for misleading advertising and racketeering are based on individual contracts. Thus reliance is an element of the claims, and Lance and Humana apply to preclude class certification.
The circuit court's reliance on the Eleventh Circuit's decision in Klay was also misplaced. Klay involved a class action brought on behalf of a large number of doctors against almost all major health maintenance organizations. 382 F.3d 1241. The district court had certified the plaintiffs' fraud-based RICO claims under Federal Rule of Civil Procedure 23(b)(3). 382 F.3d at 1250. On appeal, the defendants argued that the district court erred in certifying the class on the RICO claims because common issues of fact and law did not predominate over the individual issues specific to each plaintiff. Id. at 1254. The defendants pointed out that the RICO claims were based, in large part, on allegations of mail and wire fraud. Id. at 1257. They argued that because reliance may not be presumed in fraud-based RICO actions, the evidence had to demonstrate that each individual plaintiff actually relied on the misrepresentations at issue. Id. Despite these arguments, the Eleventh Circuit approved the district court's certification of the class on the fraud-based RICO action. Id. at 1258-61.
In this case, the circuit court found the Eleventh Circuit's analysis of the reliance issue in the context of federal rule 23(b)(3) persuasive for its interpretation of the Florida counterpart, rule 1.220(b)(3). It is true that federal cases are persuasive authority for the interpretation of rule 1.220. See Toledo v. Hillsborough County Hosp. Auth., 747 So.2d 958, 960 n. 1 (Fla. 2d DCA 1999). Nevertheless, the federal cases construing rule 23 are not binding on Florida courts. In this case, Lance and Humana are the controlling Florida authorities on the issue of whether the fraud-based advertising and racketeering claims are eligible for class certification. The circuit court was led into error when it decided to rely instead on Klay. See State v. Lott, 286 So.2d 565 (Fla.1973); Bozeman v. Higginbotham, 923 So.2d 535 (Fla. 1st DCA 2006). Moreover, the Eleventh Circuit specifically noted in Klay that because of the nature of the misrepresentations at issue in that case, circumstantial evidence could be used to show that reliance was common to the whole class. 382 F.3d at 1259. In this case, no proof could establish that each of the 65,000 members of the putative class reviewed or relied on the identical advertising in deciding to select Orkin as a provider of pest control services. For this reason, Klay is distinguishable on its facts.
4. Class Certification Under Rule 1.220(b)(3) Was an Abuse of Discretion
As the foregoing analysis demonstrates, questions affecting individual members of the putative class on counts I through V overwhelm the common questions arising from the provisions of the Contract. Viewed from the perspective of how the *880 case could be tried, this matter is an assortment of 65,000 mini-trials masquerading as a class action. A trial of the proposed class action with a due regard for the Appellants' substantive rights and the provisions of the Evidence Code could not be completed during the lives of the current participants. Cf. Galloway v. Am. Brands, Inc., 81 F.R.D. 580 (E.D.N.C. 1978) (declining to certify class where trial of individual damage claims alone would consume well over 100 years). The proposed class action does not meet the requirements for certification under rule 1.220(b)(3) because it is unmanageable.
Moreover, class certification is not superior to other methods available for the fair and efficient adjudication of the controversy for several reasons. First, because individual issues predominate, it is inappropriate to bind absent class members to the possibility of a negative outcome when the Appellees' claims may raise different issues from those of the absent class members. See Liggett Group Inc. v. Engle, 853 So.2d 434, 445 (Fla. 3d DCA 2003), approved in part, reversed in part, and remanded by 31 Fla. L. Weekly S464 (Fla. July 6, 2006). Second, adequate incentives exist for consumers who have sustained an actual loss to obtain redress. We note that customers who succeed in establishing one of the statutory claims pleaded in the complaint would be entitled to an award of attorney's fees. See § 501.2105, Fla. Stat. (FDUTPA); § 817.41(6), Fla. Stat. (misleading advertising); § 772.104, Fla. Stat. (Florida RICO). In addition, the Contract contains a provision for the award of attorney's fees in favor of Orkin. Thus consumers who successfully prosecute an action for breach of contract against Orkin could recover their attorney's fees on that claim as well. See § 57.105(7), Fla. Stat. Third, we doubt that allowing the matter to proceed as a class action on only one of the claimsas the dissent proposeswill promote judicial economy by consolidating into one action other claims pending around the State. Consumers claiming losses such as damage to their homes from termite infestation who have already filed suit against the Appellants will certainly wish to pursue multiple claims, not just the FDUTPA claim.
Before leaving this point, we should pause to consider the utility of the proposed class action in the context of the legal system as a whole. Assuming that the Appellees' claims about the Appellants' business practices are true, a class action is not the only way of addressing them. Some would argue that other methods would be superior to a class action. Of course, injured customers may pursue separate actions against the Appellants. In an action where the facts warrant it, an injured customer may request an award of punitive damages in addition to actual damages. See §§ 768.72-.737, Fla. Stat. In addition, we note that Orkin and other members of Florida's pest control industry are regulated by the Florida Department of Agriculture and Consumer Services. Disciplinary procedures, fines, and criminal sanctions are available to address the behavior of pest control operators who will not operate in accordance with the rules. See §§ 482.161, .191, Fla. Stat. Furthermore, both the State Attorney's Office and the Department of Legal Affairs may address violations of FDUTPA administratively. §§ 501.203, 501.207, Fla. Stat.; see Fonte v. AT & T Wireless Servs., 903 So.2d 1019, 1025 (Fla. 4th DCA 2005). Administrative enforcement of FDUTPA has an advantage over private remedies for damages in that the state agencies need not prove that victims suffered actual damages. See Chicken Unlimited, 374 So.2d at 97; Himes, 518 So.2d at 938 n. 1. Consequently, allowing the proposed class action to proceed is not essential to address deficienciesif any existin the Appellants' business practices.
*881 For these reasons, the class action is unmanageable, and it is not superior to other methods of adjudicating the controversy. The circuit court abused its discretion in certifying the class under rule 1.220(b)(3).
C. Certification Under Rule 1.220(b)(2)
1. The Appellees' Claim for Injunctive and Declaratory Relief (Count VI)
In their request for declaratory and injunctive relief, the Appellees allege the existence of a dispute with the Appellants concerning the enforceability of the disclaimers in the Contract. The Appellees' position is that they are entitled to the repair of the damage to their homes resulting from the alleged termite infestations and that the disclaimers limiting them to only re-treatment of their homes are unenforceable. The Appellees also contend that the disclaimers releasing Orkin from liability for its own negligence and breach of contract are unenforceable. According to the Appellees, Orkin's position is that the disclaimers were enforceable. In their prayer for relief, the Appellees request a judgment "declaring the rights, status, and obligations of the parties with respect to the termite contracts and guarantees and related legal rights and duties, which include, without limitation, a declaration the Disclaimers violated Florida law and are void and unenforceable as against public policy and enjoining [the Appellants] from further reliance on Orkin's disclaimers." Based on the allegations of count VI and the prayer for declaratory and injunctive relief, the circuit court certified the class under rule 1.220(b)(2).
2. The Requirements for Class Certification Under Rule 1.220(b)(2)
Rule 1.220(b)(2) provides for class certification where "the party opposing the class has acted or refused to act on grounds generally applicable to all the members of the class, thereby making final injunctive relief or declaratory relief concerning the class as a whole appropriate." The advisory committee's note to federal rule 23, the counterpart to rule 1.220, states that certification under section (b)(2) is not proper in "cases in which the appropriate final relief relates exclusively or predominantly to money damages." Fed.R.Civ.P. 23, advisory committee's note. The Fourth District has explained this limitation on the scope of rule 1.220(b)(2) as follows:
Monetary relief predominates unless such relief is incidental to the requested declaratory relief, meaning that "damages flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief." "[I]ncidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established." "[S]uch damages should at least be capable of computation by means of objective standards not dependent in any significant way on the intangible, subjective differences of each class member's circumstances," nor require additional hearings or evidence to ascertain.
Freedom Life Ins. Co. of Am. v. Wallant, 891 So.2d 1109, 1117-18 (Fla. 4th DCA 2004) (citations omitted). See also Océ Printing Sys. USA, Inc. v. Mailers Data Servs., 760 So.2d 1037, 1044 (Fla. 2d DCA 2000) (holding that trial court did not abuse its discretion in certifying class under rule 1.220(b)(2) because plaintiffs' injunction count sought actual injunctive relief rather than monetary damages through the roundabout method of an injunction requiring the disgorgement of illegal profits).
*882 3. The Requirements for Class Certification Under Rule 1.220(b)(2) Were Not Met
The circuit court concludedwithout any analysisthat the class is appropriate for certification under rule 1.220(b)(2). We disagree. The goal of the Appellees' action against the Appellants is the recovery of substantial money damages for themselves and for the putative class members. The recovery of money damages is at the core of the dispute; it is certainly not incidental to any claims for declaratory and injunctive relief. On the contrary, the only function served by the claim for declaratory and injunctive relief in count VI is to lay a legal foundation for the recovery of money damages against the Appellants. In this case, the injunctive relief requested would be little more than an overture to the damages opera. What is more, none of the putative class members would automatically be entitled to money damages once the claim for declaratory relief is determined. Many other liability issues would remain to be resolved, along with individual claims for damages. Because issues pertaining to money damages predominate in this case, certification under rule 1.220(b)(2) is inappropriate. See Freedom Life, 891 So.2d at 1118; see also Cooper v. Southern Co., 390 F.3d 695, 721 (11th Cir.2004) (holding that claims for monetary damages could not be considered "incidental" to claims for injunctive and declaratory relief where "complex, individualized determinations" would be necessary to fix the appropriate level of individual damage awards).

VI. CONCLUSION
For these reasons, the circuit court abused its discretion in certifying the class. We reverse the order of class certification, and we remand this case to the circuit court for further proceedings. On remand, the Appellees may attempt to narrow the scope of their claims and to modify the proposed class to satisfy the requirements of rule 1.220.
Reversed and remanded for further proceedings.
ALTENBERND, J., Concurs.
WHATLEY, J., Concurs in part and dissents in part with opinion.
WHATLEY, Judge, Concurring in part and dissenting in part.
I agree that class certification was improper as to counts II through VI, but I would affirm the certification of a class as to count I, the FDUTPA claim. Section 501.204(1), provides as follows: "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Although the FDUTPA does not define "unfair or deceptive acts or practices," it does provide that a violation of "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices" is a violation of this statute. § 501.203(3)(c).
The Appellees' complaint alleges that Florida's Structural Pest Control Act, §§ 482.011-.242, Florida Statutes (2001), proscribes unfair, deceptive, and unconscionable acts and practices, and the complaint alleges that the Appellants committed several acts in violation of this statute.[8] *883 The complaint also alleges that the Appellants engaged in the following unfair or deceptive acts or practices: making or disseminating false and misleading advertisements in violation of sections 817.06 and 817.41, Florida Statutes (2001), forging consumers' signatures on inspection documents in violation of section 831.01, Florida Statutes (2001), defrauding and cheating consumers in violation of section 817.29, Florida Statutes (2001), and improperly accepting annual renewal payments and other money from consumers in violation of section 812.014, Florida Statutes (2001).[9] The complaint further alleges that the Appellants established a practice of falsifying inspection documents and structured the compensation system to encourage such practice. It also alleges that the Appellants failed to disclose termite infestations to consumers and inaccurately represented that homes did not have such infestations.
Courts have held that FDUTPA claims may be brought in a class action lawsuit. In Latman v. Costa Cruise Lines, N.V., 758 So.2d 699, 702 (Fla. 3d DCA 2000), the Third District Court of Appeal held that class certification was appropriate in the appellants' suit filed pursuant to FDUTPA. In Latman, as in this case, the appellees argued that FDUTPA required the appellants to prove reliance and damages as to each class member, which necessarily entails a case-by-case adjudication that is not appropriate for class consideration. The Third District disagreed, holding that in a FDUTPA claim, members of the class do not need to individually prove reliance on the alleged misrepresentations, and it "is sufficient if the class can establish that a reasonable person would have relied on the representations." Id. at 703 (quoting Dix v. Am. Bankers Life Assurance Co. of Fla., 429 Mich. 410, 415 N.W.2d 206, 209 (1987)).
In Davis v. Powertel, Inc., 776 So.2d 971, 973 (Fla. 1st DCA 2000), the First District agreed with Latman, noting that "[a] party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue." Rather, the party must establish that "the practice was likely to deceive a consumer acting reasonably in the same circumstances." Id. at 974. In the present case, I believe that the issues of proof related to unfair or deceptive practices common to the class predominate over individual questions of law or fact. For example, the Appellees allege in their complaint that the Appellants engaged in unfair or deceptive acts or practices by using illegal disclaimers that appear in minute fine print on the reverse side of the standard termite contract, limiting Orkin's termite protection guarantee. This issue of proof as to whether Orkin's contracts were illegal is common to all putative members of the class. In determining whether class certification is appropriate, "`it is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions.'" Klay v. Humana, Inc., 382 F.3d 1241, 1254 (11th Cir.2004) (quoting In re Theragenics Corp. Sec. Litig., 205 F.R.D. 687, 697 (N.D.Ga.2002)).
I also believe that issues of proof related to causation and damages common to the class predominate over individual questions of law or fact. In Davis, 776 So.2d at 974-75, the First District held that the *884 claims for damages can be asserted on behalf of the class, because they share one essential common feature: the alleged defective practice reduced the value of the agreements. But see Philip Morris USA Inc. v. Hines, 883 So.2d 292 (Fla. 4th DCA 2003) (concluding that FDUTPA claim could not be litigated as class action where amount of damages depended on manner in which individual consumer used the product).
The First District has applied FDUTPA to a case involving the adequacy of a termite inspection. In Urling v. Helms Exterminators, Inc., 468 So.2d 451 (Fla. 1st DCA 1985), the appellants filed suit under FDUTPA, alleging that they relied on the appellees' inspector's report that a home had no termite damage, and the inspector later admitted that he never signed the report and the inspection never took place. The court held that this evidence created a jury question as to whether FDUTPA applied to the claim. Id. at 454. As to damages, the court held that FDUTPA "entitles a consumer to recover damages attributable to the diminished value of the goods or services received, but does not authorize recovery of consequential damages to other property attributable to the consumer's use of such goods or services." Id.
Similarly here, actual damages will not include consequential damages, such as the cost to repair a structure damaged by termites. Therefore, it is irrelevant that perhaps only some of the Appellees incurred termite damage to their homes. Under FDUTPA, damages must be measured by the reduction in value of the agreements caused by the deceptive or unfair acts or practices. See id.; Orkin Exterminating Co. v. Petsch, 872 So.2d 259 (Fla. 2d DCA 2004) (holding that section 501.211 allows consumers to recover damages for only the diminished value of the services received). Consequently, issues pertaining to proof of damages will be identical for every member of the class, and those issues common to the class predominate over individual questions of law or fact.
NOTES
[1] We have jurisdiction under Florida Rule of Appellate Procedure 9.130(a)(3)(C)(vi).
[2] The definition of the Orkin RICO Subclass calls to mind the classic example of a loaded question, "Have you stopped beating your wife yet?" The Appellants did not concede that Orkin's advertisements and representations were misleading or that they violated the statutes mentioned. The Appellees would have to prove their contentions about Orkin's advertisements and representations. The definition of the subclass is untenable because a mini-hearing on the merits of each claim would be required to determine membership in the subclass. See Forman v. Data Transfer, Inc., 164 F.R.D. 400, 403 (E.D.Pa.1995).
[3] For this reason, neither the circuit court's order certifying the class nor our decision reversing that order should be interpreted as expressing any opinion on the merits of the Appellees' claims against the Appellants.
[4] The relief requested by the Appellees on their FDUTPA claim in count I of the complaint is limited to damages. In count VI of the complaint, the Appellees assert claims under FDUTPA for declaratory and injunctive relief.
[5] Assuming that the disclaimers in the Contract were unenforceable as the Appellees contend, then Orkin may also have had a conditional duty to repair termite damage. We express no opinion on the validity of the various disclaimers in the Contract.
[6] Mark Moller makes this point in The Rule of Law Problem, 28 Harv. J.L. & Pub. Pol'y at 874.
[7] Kris Cornett, Maria Garcia, and the Butlands executed their agreements with Orkin in 1991, 1992, and 1993 respectively.
[8] Section 482.227 provides that any contract for the treatment of wood-destroying organisms must use the term "limited" with the term "guarantee" or "warranty," "[i]f the licensee promises only to provide additional treatment if infestation occurs during a specified period after treatment," except for when the term "guarantee" or "warranty" is used in a disclaimer. Further, if the licensee promises neither restoration of the property nor additional treatment when infestation occurs, then the term "guarantee" or "warranty" may be used only in a disclaimer. Any such disclaimer "must appear in conspicuous type on the face of the contract."
[9] The complaint also alleges various violations of Florida Administrative Code Rule 5E-14.