NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

KENF, L.L.C.,                                    )
                                                 )
      Appellant,                          )
                                                 )
v.                                               )     Case No. 2D18-2804
                                                 )
JABEZ RESTORATIONS, INC., a                      )
Florida corporation, d/b/a SERVPRO              )
OF BRADENTON,                                    )
                                                 )
      Appellee.                           )
_____)

Opinion filed  February 27, 2019

Appeal from the Circuit Court for Manatee
County; Gilbert A. Smith Jr., Judge.

Charles V. Barrett III, Tampa; and
Frederick W. Vollrath, Tampa, for Appellant.

John P. Fleck, Jr., Bradenton, for Appellee.


VILLANTI, Judge.


      KENF, L.L.C., seeks review of the final judgment entered in favor of Jabez

Restorations, Inc., d/b/a ServPro of Bradenton, in this action arising out of an unpaid bill

for services.  Because we agree with KENF that the amount of damages awarded in the

final judgment was not supported by the evidence presented at the bench trial, we

reverse the damages award and remand for entry of an amended final judgment. In all other respects, we affirm.

KENF is the owner of an apartment complex in Bradenton. In early June 2016, a fire broke out in one of the apartments, which caused the fire sprinkler system to activate and resulted in water damage to three apartments. About a week later, KENF asked Jabez to inspect the damaged units and prepare an estimate to remediate and repair them. Based on its initial inspection, Jabez determined that fans and dehumidifiers would be sufficient to dry out the apartments, after which certain repairs would be undertaken, and Jabez provided KENF with an estimate for this work.

KENF's local maintenance manager authorized Jabez to go forward with the work to dry out the apartments; however, before Jabez could actually begin the work, KENF required Jabez to submit a vendor packet to its home office to become "approved." Once KENF approved Jabez as a vendor—approximately one week after the initial inspection—Jabez returned to the damaged apartments and discovered that the delay in any dry-out and remediation work had resulted in mold growth in the apartments. Jabez installed dehumidifiers to start drying out the apartments and, with authorization from KENF's maintenance manager, called a mold assessor to inspect the apartments and provide a revised scope and cost for full repairs.

While waiting for the mold assessor's report, Jabez continued to run the dehumidifiers in the water-damaged apartments, checking on them periodically. When the mold assessor's report was completed, Jabez forwarded it to KENF along with a revised scope of work necessary to repair the mold damage in addition to the original water damage. KENF rejected this proposal but requested that Jabez leave the

dehumidifiers in place and running until a new contractor could get its vendor packet approved and begin work. Jabez agreed to do so. Once KENF advised Jabez that the new contractor was on site and that Jabez could remove its equipment, Jabez did so the same day.

Jabez then invoiced KENF $17,437.19 for the use of the dehumidifiers for the entire time that they were in place at KENF's request and the cost of the mold assessor's report. When KENF balked at paying the invoice, Jabez agreed to reduce the cost of the equipment by $2000, bringing the invoice total down to $15,557.75. Despite this concession, KENF refused to pay any part of the invoice.

Jabez subsequently sued KENF to recover the amount of its invoice. While the complaint is not a model pleading, it does allege that Jabez provided services to KENF with KENF's approval, that KENF accepted the benefit of the services, and that the value of KENF's property was enriched by the services provided by Jabez. Jabez specifically alleged in the complaint that KENF owed it $15,557.75 for its services. In its answer, KENF denied that it had any contract with Jabez and denied that it had received any benefit from the work Jabez performed.

At the conclusion of the bench trial of this matter, the trial court found in favor of Jabez, and it awarded Jabez $17,437.19—the amount of the original invoice before Jabez voluntarily reduced it—on the claim for unjust enrichment. KENF now appeals this final judgment.

KENF's primary argument on appeal is that the trial court erred in entering final judgment in favor of Jabez because the evidence presented at the bench trial was

legally insufficient to prove a claim for unjust enrichment.[1]  While we disagree with KENF's position as to its liability for unjust enrichment damages, we agree that the amount of damages awarded was improper.

"An action for 'unjust enrichment' exists to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity."  Henry M. Butler, Inc. v. Trizec Props., Inc., 524 So. 2d 710, 711 (Fla. 2d DCA 1988).  The elements of such a claim are: "(1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof."  Rollins, Inc. v. Butland, 951 So. 2d 860, 876 (Fla. 2d DCA 2006).  Essentially, the doctrine operates to imply a contract where none otherwise exists so as to ensure equity between the parties.  See 14th & Heinberg, LLC v. Terhaar & Cronley Gen. Contractors, Inc., 43 So. 3d 877, 880 (Fla. 1st DCA 2010).

In this case, the evidence presented at the bench trial established that Jabez conferred a benefit on KENF in that it ran dehumidification equipment in the damaged apartments to help prevent further water and mold damage from the date KENF approved Jabez to do the work until the date KENF requested that the equipment

_____

[1]KENF also argued that the trial court erred by entering final judgment in favor of Jabez based on unjust enrichment when such a claim was not properly pleaded in the complaint.  We reject this argument without further discussion.  In addition, KENF argued that the trial court abused its discretion when it sanctioned KENF for failing to timely file a witness and exhibit list by excluding KENF's witnesses and exhibits at the bench trial.  Because KENF did not provide this court with a transcript of the hearing that resulted in these sanctions, we have no record basis upon which to conclude that the trial court abused its discretion.  See Applegate v. Barnett Bank of Tallahassee, 377 So. 2d 1150, 1152 (Fla. 1979).  Hence, we affirm that ruling as well.

be removed.  It is clear from the evidence that KENF asked for this work to be done, and it accepted the benefit of this work.  Any doubt concerning whether the equipment conferred a benefit and whether KENF recognized and accepted that benefit was eliminated by the evidence of KENF's request that Jabez leave the dehumidifiers in place and running while KENF was waiting for the other contractor to be approved to start work.  At a minimum, this evidence suggested that KENF recognized that the equipment was performing a function and doing so properly.  In light of this, it would be inequitable to permit KENF to reap the benefit of the dehumidification of the apartments without paying the value of that benefit to Jabez.  Hence, the totality of the evidence supports the trial court's conclusion that Jabez proved its claim for unjust enrichment.

In support of its argument for reversal, KENF contends that the existence of any benefit was speculative because Jabez did not offer any evidence of the humidity levels in the apartments before and after it started work to be able to prove that the dehumidifiers were actually doing their job.  Without such evidence, KENF claims that Jabez did not and cannot prove that it provided any benefit.  However, as mentioned above, this claim is belied by KENF's request that Jabez keep the dehumidifiers in place and running during the time that KENF was getting the replacement contractor approved.  If KENF saw no benefit to the dehumidifiers, it would have had no reason to ask Jabez to keep them installed and running for this additional period of time.

KENF also argues that Jabez provided no benefit to KENF because the apartments were in the same state of disrepair when Jabez removed its dehumidifiers as they were when Jabez installed them.  But this ignores the evidence that the equipment provided by Jabez prevented further damage to KENF's apartments.  Based

on the testimony presented, the benefit was the mitigation of the existing damage and prevention of further damage—not actual repairs to the existing damage. The term "benefit" does not require a measurable improvement. Black's Law Dictionary defines "benefit" to include "the helpful or useful effect something has." Benefit, Black's Law Dictionary (10th ed. 2014). Here, the use of Jabez's dehumidifiers had the helpful effect of preventing further damage to the apartments. KENF apparently recognized this benefit when it requested that Jabez leave the dehumidifiers running while a new contractor was brought on board. In light of this evidence, KENF's argument that there was no evidence to support the trial court's finding that Jabez conferred a benefit is unavailing, and we affirm the final judgment to the extent that it finds KENF liable for damages to Jabez.

As to the amount of those damages, however, we must reverse and remand for entry of an amended final judgment because the final judgment awards damages in an amount neither sought nor proved by Jabez. In both its complaint and at trial, Jabez sought only the amount it ultimately billed KENF, which was $15,557.75. Nevertheless, the trial court awarded damages in the amount of $17,437.19—the amount Jabez originally invoiced KENF before Jabez voluntarily reduced that invoice. Clearly, it is unjust to award Jabez more for its services in the final judgment than it would have received had KENF properly paid the invoice submitted to it. See 14th & Heinberg, LLC, 43 So. 3d at 882 (affirming damages award for an unjust enrichment claim in the amount of the unpaid balance of the subcontractor's original contract and noting that "it would be inequitable to award Terhaar the value of the increase in rental value when it would not have received such value had the contract been performed by

- 6 -

Montgomery Ward").  Jabez is entitled to be paid for its services, but it is not entitled to a windfall over and above the amount it actually claimed.  Accordingly, we reverse the damages awarded in the final judgment and remand for the trial court to enter an amended judgment in favor of Jabez in the amount of $15,557.75.[2]

Affirmed in part, reversed in part, and remanded with directions.

LUCAS and ROTHSTEIN-YOUAKIM, JJ., Concur.

---

[2]This direction as to the amount to be awarded in the final judgment is limited to the principal amount of damages.  We do not preclude any award of any interest, attorney's fees, or costs to which Jabez may be entitled.