SILBERMAN, Judge.
Appellant Sonic Automotive- Inc. (Sonic) challenges the trial court’s nonfinal order granting a motion for class certification filed by Appellees Enrique Y. Galura and Marisa Hazelton (jointly referred to as the class representatives). The alleged misconduct giving rise to the class representatives’ claim relates to Sonic’s sale of a product known as “Etch” in conjunction with its sale of motor vehicles. We affirm the certification order to the extent that it grants certification pursuant to Florida Rule of Civil Procedure 1.220, subsections (a) and (b)(3). However, we reverse and remand for further proceedings as to the grant of certification under rule 1.220(b)(2) and as to the class definition.
Sonic owns auto dealerships in Florida and around the nation. The class representatives filed their first amended complaint against Sonic, alleging one claim for relief under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), sections 501.201-.213, Florida Statutes, (1998-2002). FDUTPA protects consumers from “unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.” § 501.202(2). The complaint alleges that Sonic, through deceptive and unfair business practices, orchestrated a scheme to “stuff’ or “pack” Etch into vehicle sales transactions with *964 out proper disclosure to customers. The complaint asserts that Etch is an essentially worthless and “unconscionably overpriced” anti-theft product consisting of an identification number that is permanently acid-etched onto a vehicle’s windows and an accompanying warranty that constitutes an insurance product. The complaint details Sonic’s practices that purportedly violate FDUTPA and demands a judgment for damages, attorney’s fees, costs, and prejudgment interest. The prayer for relief also demands declaratory and injunctive relief.
On June 3, 2005, after a hearing on the class representatives’ motion for class certification, the trial court entered an order certifying a statewide class of consumers who purchased vehicles from any of Sonic’s Florida dealerships and whose purchases included Etch. The court granted certification pursuant to subsections (a), (b)(2), and (b)(3) of rule 1.220. The certification order “certifies and defines as the Sonic Class, all customers who on or after December 30, 1998, purchased or leased from a Sonic dealership in the State of Florida a vehicle that included an APCO[1] etch product as part of the transaction.”
Under rule 1.220(a), before a claim or defense may be maintained on behalf of a class, the trial court must first conclude as follows:
(1) the members of the class are so numerous that separate joinder of each member is impracticable, (2) the claim or defense of the representative party raises questions of law or fact common to the questions of law or fact raised by the claim or defense of each member of the class, (3) the claim or defense of the representative party is typical of the claim or defense of each member of the class, and (4) the representative party can fairly and adequately protect and represent the interests of each member of the class.
These factors are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. See Rollins, Inc. v. Butland, 951 So.2d 860, 868 (Fla. 2d DCA 2006); Marco Island Civic Ass’n v. Mazzini 805 So.2d 928, 930 (Fla. 2d DCA 2001). If the requirements of subsection (a) are met, “a plaintiff must also satisfy one of the three subdivisions of rule 1.220(b).” Rollins, 951 So.2d at 868.
Here, the trial court determined that the proposed class satisfies the criteria of rule 1.220(b)(2) and (b)(3). Rule 1.220(b)(2) states that it applies where “the party opposing the class has acted or refused to act on grounds generally applicable to all the members of the class, thereby making final injunctive relief or declaratory relief concerning the class as a whole appropriate.” Rule 1.220(b)(3) states that it applies if
the claim or defense is not maintainable under either subdivision (b)(1) or (b)(2), but the questions of law or fact common to the claim or defense of the representative party and the claim or defense of each member of the class predominate over any question of law or fact affecting only individual members of the class, and class representation is superior to other available methods for the fair and efficient adjudication of the controversy.
See also Rollins, 951 So.2d at 868 (noting same).
We review the trial court’s order certifying the class action for an abuse of discretion. See id. at 868; Marco Island, *965 805 So.2d at 980. The party seeking certification has the burden of proving the propriety of class action status and “[t]here must be an evidentiary basis to support an order certifying a class when the nonmov-ing party contests class certification and it is not clear from the pleadings that a lawsuit qualifies for class action status.” Rollins, 951 So.2d at 868.
The record reflects that the class representatives sufficiently established the prerequisites for certification under subsections (a) and (b)(3) of rule 1.220. Thus, we affirm certification under those subsections without discussion except to note that the facts and legal theories argued in support of certification are very similar to those asserted in Veal v. Crown Auto Dealerships, Inc., 236 F.R.D. 572 (M.D.Fla.2006). There, the United States District Court for the Middle District of Florida certified a class action against Crown Auto Dealerships, Inc., based upon Crown’s sale of Etch as part of its car sales.[2] The plaintiffs claims included a FDUTPA claim similar to the claim brought here. The plaintiff alleged that Crown
engaged in deceptive and unfair business practices in order to profit from the sale of the “Etch” product by routinely failing to make adequate disclosures concerning the sale of the product, including accurate disclosures of the amount financed, finance charges, and annual percentage rates in its standard form retail installment sales contract.
Id. at 575-76. The plaintiff further alleged that the product registration form “was misleading because it misled consumers as to the true benefit it provided, it failed to specify the premium paid for the ‘Etch’ product and it failed to name the insurer providing coverage.” Id. at 576.
As to the trial court’s certification under rule 1.220(b)(2), we reverse. Although the certification order concludes that the requirements for certification under rule 1.220(b)(2) have been met, the record does not establish that injunctive or declaratory relief is appropriate to the class as a whole. In fact, the class representatives acknowledge changes in Florida law and changes in the business practices of certain of Sonic’s dealerships that seem to obviate the need for or viability of in-junctive or declaratory relief. Further, the trial court did not make factual findings that support its conclusion that certification is proper under rule 1.220(b)(2). See Fla. R. Civ. P. 1.220(d)(1) (requiring that the court “state the findings of fact and conclusions of law upon which the determination is based.”). Our reversal is without prejudice to the trial court recerti-fying the class under rule 1.220(b)(2) should the court determine that certification is appropriate upon a proper showing by the class representatives.
We next address the class definition contained in the certification order. The trial court certified and defined the class as “all customers who on or after December 30, 1998, purchased or leased from a Sonic dealership in the State of Florida a vehicle that included an APCO etch product as part of the transaction.” Sonic argues, and the class representatives properly concede, that the certified class should not include those individuals who received a refund for their purchase of Etch.[3] Thus, we reverse the certification *966 order as to the class definition and remand with directions that the trial court modify the order to exclude those individuals who received a refund for their Etch purchase.
Sonic also argues that individuals who purchased Etch on or after April 23, 2002, must be excluded from the class because those individuals cannot seek relief under FDUTPA. Section 501.212(4), Florida Statutes (2002), provides that FDUTPA does not apply to “[a]ny person or activity regulated under laws administered by the Department of Insurance.”[4] Section 634.121(1), Florida Statutes (2002), states that “[a] service agreement form or related form may not be issued or used in this state unless it has been filed with and approved by the department.”
Effective as of April 23, 2002, the legislature added subsection 634.011(8)(b), which amended the definition of the term “motor vehicle service agreement” to include agreements providing for the payment of “vehicle protection expenses.” See Ch. 02-86, § 1, at 954, Laws of Fla.; § 634.011(8)(b)(l)(a). Such expenses are those “incurred by the service agreement holder for loss or damage to a covered vehicle.” § 634.011(8)(b)(l)(a). These expenses are “payable in the event of loss or damage to the vehicle as a result of the failure of the vehicle protection product to prevent the theft of the motor vehicle or to assist in the recovery of the stolen motor vehicle.” § 634.011(8)(b)(2) (emphasis added). The term “vehicle protection product” is defined as “a product or system installed or applied to a motor vehicle or designed to prevent the theft of the motor vehicle or assist in the recovery of the stolen motor vehicle.” § 634.011(8)(b)(1)(b).
Aside from regulating the content of motor vehicle service agreements, chapter 634 addresses other activities involving such agreements. For example, it regulates the selling, advertising, and marketing of motor vehicle service agreements; it prohibits unfair methods of competition or unfair or deceptive acts or practices involving the business of such agreements; and it criminalizes misconduct in the advertising of such agreements or in charging extra for a specific ancillary coverage or product for which an applicant has not applied without that applicant’s informed consent. See §§ 634.031, .095, .2185. In addition, it defines unfair methods of competition and unfair or deceptive acts or practices involving motor vehicle service agreements and establishes a procedure for addressing such conduct, including proceedings by the Department of Insurance. See §§ 634.282, .284.
Based on these statutes, the Etch product and activities at issue here fall within the expanded definition of motor vehicle service agreements and their regulation that the legislature implemented on April 23, 2002. As a result, the remedies provided for in FDUTPA are not available to those who purchased Etch as of that date, and the class cannot include such individuals. Therefore, on remand, the trial court shall modify the class definition to exclude those individuals.
We have considered Sonic’s other arguments but conclude that, except as discussed above, the certification order is proper. Accordingly, we affirm the order as to class certification under subsections (a) and (b)(3) of rule 1.220, but we reverse the order as to certification under rule *967 1.220(b)(2) and the class definition. We remand for the trial court to enter an amended certification order consistent with this opinion. We further note that as the case progresses, the trial court may alter or amend the order as may be appropriate. See Fla. R. Civ. P. 1.220(d)(1).
Affirmed in part, reversed in part, and remanded.
FULMER, C.J., and LaROSE, J., Concur.

. The order explains that "[t]he glass etch product sold by Sonic’s Florida dealerships was a product offered by Automobile Protection Corporation (‘APCO’) of Norcross Georgia.”

. The court granted certification under Federal Rule of Civil Procedure 23, subsections (a) and (b)(3), which parallel the requirements for certification under rule 1.220, subsections (a) and (b)(3).

. The record reflects that the Department of Insurance investigated Sonic for conduct relating to its sale of Etch and that Sonic ultimately implemented the refund program, in *966 addition to other mitigation, pursuant to an agreement with the department.

. Section 501.212(4) has since been amended to refer to laws administered by the Depart-men! of Financial Services instead of the Department of Insurance. See Ch. 03-261, § 565, at 1177, Laws of Fla.; Ch. 04-390, § 13, at 2201, Laws of Fla.