BENTON, J.
On behalf of their son W.P.M., Daniel and Cheryl Montero appeal the judgment entered after orders dismissing complaints they filed against the Duval County School Board (Board) in the Fourth Judicial Circuit. We affirm.
We have jurisdiction even though, at least as to count one, dismissal was solely for failure to exhaust administrative remedies and explicitly “without prejudice.” See Hiñóte v. Ford Motor Co., 958 So.2d 1009, 1010-11 (Fla. 1st DCA 2007) (“The order of dismissal is clearly final when, for instance, the claim could only be pursued by filing a new complaint, or where there was a failure to serve the defendant, or failure to exhaust administrative remedies, Hollingsworth v. Brown, 788 So.2d 1078 (Fla. 1st DCA 2001).” (citations omitted)); Carlton v. Wal-Mart Stores, Inc., 621 So.2d 451, 452 (Fla. 1st DCA 1998) (same); see also Gerber v. Vincent’s Men’s Hairstyling, Inc., 57 So.3d 935, 936-37 (Fla. 4th DCA 2011) (same); Valcarcel v. Chase Bank USA NA, 54 So.3d 989, 990 (Fla. 4th DCA 2010) (“An order dismissing an action without prejudice and without granting leave to amend is a final appealable order.”). But see Benton v. Fla. Dep’t of Corr., 782 So.2d 981, 981-82 (Fla. 1st DCA 2001).
For purposes of decision, we take as true all well-pleaded allegations of the complaints appellants filed in circuit court. Born deaf, W.P.M. is eligible for exceptional student education (ESE) services, which the school district proposed to furnish in accordance with an individual education plan (IEP) created by a team that consisted of teachers, district personnel, specialists, and W.P.M.’s parents, appellants here. See Fla. Admin. Code R. 6A-6.03028(1), (3). The IEP outlines services the team concluded W.P.M. needs to get a free appropriate public education (FAPE), in accordance with the requirements laid down by the Individuals with Disabilities Education Act (IDEA), codified at 20 U.S.C. § 1400 et seq. (2010).
Pursuant to section 1002.39, Florida Statutes (2010), an eligible ESE student with an IEP may receive a John M. McKay Scholarship payable from public funds to a private school the parents choose. § 1002.39(1), (2)(a)3., Fla. Stat. The school district evaluates the student’s matrix of services level, then notifies the Department of Education (Department), which informs the private school of the amount of the scholarship.[1] *409 § 1002.39(5)(b)2.b.-c., Fla. Stat. The “school district may change a matrix of services only if the change is to correct a technical, typographical, or calculation error.” § 1002.89(5)(b)2.d., Fla. Stat. District personnel transferred information from W.P.M.’s IEP to a form “matrix of services” documenting the services he was to receive as an ESE student, see § 1011.62(l)(e), Fla. Stat. (2010), assigned a numerical “score,” then transmitted the score to the Department.
In their amended complaint, appellants alleged the Board understated their child’s matrix of services score in order to reduce the McKay Scholarship funds available to them. In Count I, they sought a declaration of their rights and duties under the McKay Scholarship program and matrix of services scoring process, and requested the circuit court declare[2] that the Board had miscalculated the child’s matrix of services score and that they were entitled to recalculation of the matrix of services score “to more accurately reflect his IEP and particular educational needs.” In Count II, they alleged that district personnel had deliberately scored the matrix of services at less than what was appropriate; and that understating W.P.M.’s matrix of services score and misleading them about the services W.P.M. required violated the Florida Deceptive and Unfair Trade Practices Act (FDUTPA).
The Board moved to dismiss both counts. As to Count I in particular, the Board maintained the appellants had failed to “pursue, much less exhaust, administrative remedies.” The IDEA requires and Florida has fully implemented an administrative complaint process[3] which includes *410 the right to a hearing before an administrative law judge regarding “the identification, evaluation, or educational placement” of a child. See 20 U.S.C. § 1415(b)(6)(A); see also § 1003.57(l)(b), Fla. Stat. (2010) (“The parent of an exceptional student evaluated and placed or denied placement in a program of special education shall be notified of each such evaluation and placement or denial. Such notice shall contain a statement informing the parent that he or she is entitled to a due process hearing on the identification, evaluation, and placement, or lack thereof.”); Fla. Admin. Code R. 6A-6.03311(9) (setting forth procedures for a due process hearing). By statute, no court action is permitted until after exhaustion of these administrative remedies. See 20 U.S.C. § 1415(i)(2); § 1003.57(l)(b), Fla. Stat.; Fla. Admin. Code R. 6A-6.03311(9)(w). In the present case, W.P.M.’s parents never filed an administrative complaint objecting to the IEP they helped formulate, much less requested a due process hearing.
Separately,[4] the Department is required to “[establish, a process by which individuals may notify the department of any violation by a ... school district of state laws relating to [McKay Scholarship] program participation.” § 1002.39(6)(c), Fla. Stat. Rule 6A-6.0970(8)-(9), Florida Administrative Code, sets forth the complaint process.[5] If a school district has violated laws or rules related to scholarship program participation, “the Department shall take any actions allowable under law to compel school district compliance with program requirements and to ameliorate the effect of the violation on the parent, student, or private school as appropriate.” Fla. Admin. Code R. 6A-6.0970(9)(c)3.c.
After hearing argument,[6] the circuit court entered an order dismissing Count I, without prejudice, for failure to exhaust administrative remedies, on grounds that “any challenge to a matrix of services score for purposes of the McKay Scholarship Program must be made pursuant to the administrative remedy provided” in Rule 6A-6.0970, prior to seeking relief in court. The trial court also found that the appellants’ challenge to the matrix of services score fell within the scope of the *411 IDEA, to the extent appellants’ allegations related to the identification, evaluation or educational placement of W.P.M., and that appellants had also failed to exhaust administrative remedies available to correct any errors of that kind.
That a “school district may change a matrix of services only if the change is to correct a technical, typographical, or calculation error,” § 1002.39(5)(b)2.d., Fla. Stat., once the IEP process has come to an end, is a function of the statutory constraint [7] that “[t]he nature and intensity of the services indicated on the matrix shall be consistent with the services described in each exceptional student’s individual educational plan.” § 1011.62(l)(e)l.a., Fla. Stat. On appeal, appellants do not clearly argue that the matrix of services score fails to reflect accurately the “nature and intensity of the services” in W.P.M.’s IEP. But the appellants do argue the Board “disagreed with the professionals who worked with” their child on a daily basis and assigned a low matrix of services score that significantly reduced the amount of McKay. Scholarship funds available to them.
In any event, the circuit court correctly dismissed Count I for failure to exhaust administrative remedies. See Norman v. Ambler, 46 So.3d 178, 182 n. 5 (Fla. 1st DCA 2010) (“As a general proposition, the doctrine of exhaustion of administrative remedies precludes judicial intervention where available administrative remedies can afford the relief a litigant seeks. See Fla. Fish & Wildlife Conservation Comm’n v. Pringle, 838 So.2d 648 (Fla. 1st DCA 2003); Fla. Marine Fisheries Comm’n (Div. of Law Enforcement) v. Pringle, 736 So.2d 17, 21 (Fla. 1st DCA 1999) (that agency ‘is charged with implementing not only statutory provisions, but also ... constitutional provisions ... does not ... justify expansion of ... limited role assigned the judiciary1 by the exhaustion doctrine).”).
In Count II of the amended complaint, the appellants alleged the Board engaged in trade or commerce by “providing, offering, and/or distributing a reduced amount of McKay Scholarship money” to the private school on behalf of the appellants’ child, whom the complaint described as a consumer of educational services and scholarship money.[8] The theory of Count II is that the Board’s allegedly improperly assigning a low matrix of services score (allegedly in disregard of expert opinions from W.P.M.’s teachers, therapists, and other specialists) violated section 1002.39 and Rule 6A-6.0970 and was an unfair and deceptive act that was not required, permitted or condoned by state or federal law.
The FDUTPA declares unlawful “[u]n-fair methods of competition, unconscionable acts or practices, and unfair or decep *412 tive acts or practices in the conduct of any trade or commerce.” § 501.204(1), Fla. Stat. (2011). “Trade or commerce” is defined to mean “the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated” and includes “the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity.” § 501.203(8), Fla. Stat. (2011).. “Thing of value” is defined to include “any moneys, donation, membership, credential, certificate, prize, award, benefit, license, interest, professional opportunity, or chance of winning.” § 501.203(9), Fla. Stat.
As the circuit court ruled, however, the FDUTPA does not apply to “[a]n act or practice required or specifically permitted by federal or state law.” § 501.212(1), Fla. Stat. (2011). The Board’s completing a matrix of services score form is not engaging in “trade or commerce” within the meaning of the FDUTPA. The numerical score this essentially ministerial act yields is an administrative tool for the Department to use in allocating state funds for the education of exceptional students, and is not itself a “thing of value.” Nor is granting scholarships engaging in “trade or commerce” within the meaning of the FDUTPA. The appellants have drawn our attention to no case in which a governmental entity was deemed to be involved in “trade or commerce” in administering a public welfare grant program required by state law.
Assuming for purposes of decision only that Count II was not, like Count I, also properly dismissed for failure to exhaust administrative remedies,[9] we hold the trial court correctly construed the FDUTPA in dismissing Count II. Dismissal of Count II was appropriate because the appellants did not allege facts to establish that assigning a matrix of services score was an act constituting “trade or commerce.” The FDUTPA does not apply to an “act or practice required or specifically permitted by federal or state law” § 501.212(1), Fla. Stat.; and assigning a matrix of services score is an act or practice required or specifically permitted by state law. See §§ 1002.39(5)(b)(l) & 1011.62(l)(e), Fla. Stat.
Affirmed.
VAN NORTWICK and CLARK, JJ., concur.

. Section 1002.39(10), Florida Statutes (2010), provides:
(a)l. The maximum scholarship granted for an eligible student with disabilities shall be equivalent to the base student allocation in the Florida Education Finance Program multiplied by the appropriate cost factor for the educational program that would have been provided for the student in the district school to which he or she was assigned, multiplied by the district cost differential.
2. In addition, a share of the guaranteed allocation for exceptional students shall be determined and added to the amount in subparagraph 1. The calculation shall be based on the methodology and the data used to calculate the guaranteed allocation for exceptional students for each district in chapter 2000-166, Laws of Florida. Except as provided in subparagraphs 3. and 4., the calculation shall be based on the student's grade, matrix level of services, and the difference between the 2000-2001 basic program and the appropriate level of services cost factor, multiplied by the 2000-2001 base student allocation and the 2000-2001 ’district cost differential for the sending district....
The annual student allocation is established pursuant to section 1011.62, Florida Statutes (2010). Section 1011.62(l)(e)l.a. provides the funding model for ESE programs: “Exceptional education cost factors are determined by using a matrix of services to document the services that each exceptional student will receive. The nature and inten *409 sity of the services indicated on the matrix shall be consistent with the services described in each exceptional student’s individual educational plan.”

. The appellants also demanded judgment against the Board for damages, attorneys’ fees, costs, and prejudgment and post-judgment interest. The Board also argued dismissal was appropriate, inter alia, because section 1002.39(11), Florida Statutes, expressly provides that ”[n]o liability shall arise on the part of the state based on the award or use of a John M. McKay Scholarship.”

. When a complaint is received, the complainant must be afforded an opportunity for an impartial due process hearing "which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency." 20 U.S.C. § 1415(f)(1)(A) (2010). Thereafter, any party aggrieved by the findings and decision made at the administrative level has the right to bring a civil action in state or federal court. 20 U.S.C. § 1415(i)(2)(A). See also Fla. Admin. Code R. 6A-6.03311(9)(w) ("A decision made in a due process hearing shall be final, unless, within ninety (90) days from the date of the decision of the ALJ, a party aggrieved by the decision brings a civil action in federal district or state circuit court.... ”).
We reject appellants’ contention that pursuing an administrative remedy would be futile. See Fla. Admin. Code R. 6A-6.0331 l(5)(b)4. ("Where the Department of Education has found a failure to provide appropriate services, the Department must address the failure to provide appropriate services, including corrective action appropriate to address the needs of the student (such as compensatory services or monetary reimbursement) and appropriate future provision of services for all students with disabilities.”). See also [] v. Leon Cnty. Sch. Bd., Case No. 12-2829E (Fla. DOAH Jan. 25, 2013) (ordering the school board to reimburse for tuition payments for the student's attendance at a private school summer program); [] v. Miami-Dade Cnty. Sch. Bd., Case No. 11-2807E (Fla. DOAH Aug. 31, 2011) (ordering school board to "conduct a Functional Behavior Assessment for the Student that considers all appropriate information,” revise the "Behavioral Intervention Plan for the Student as appropriate,” and reconvene "the IEP team ... and develop an appropriate Individual Education Plan for the Student”); Miami-Dade Sch. Bd. v.[], Case No. 10-0529E (Fla. DOAH May 24, 2010) (ordering school board to provide an *410 independent educational evaluation at public expense because the school board's earlier reevaluation was inadequate) (private party names redacted on DOE website, http://www. fldoe.org/academics/exceptional-student-edu/ dispute-resolution/due-process-hearing-orders.stml).

.See, e.g., I.G. v. Osceola Cnty. Sch. Bd., Case No. 11-5455E (Fla. DOAH Nov. 9, 2011) ("Petitioner may not ... transform what in substance is a complaint of a matrix calculation error alleged to violate McKay Scholarship program requirements into a complaint of an IDEA violation that is cognizable in a due process hearing under rule 6A-6.03311(9)”).

. The department must conduct an inquiry of any written complaint of a violation of this section, or make a referral to the appropriate agency for an investigation, if the complaint is signed by the complainant and is legally sufficient. A complaint is legally sufficient if it contains ultimate facts that show that a violation of this section or any rule adopted by the State Board of Education has occurred. In order to determine legal sufficiency, the department may require supporting information or documentation from the complainant. A department inquiry is not subject to the requirements of chapter 120.

.The appellants argued Florida’s administrative remedies were incapable of providing the type of relief they sought. They argued that the complaint procedure set forth in Rule 6A-6.0970 required only a cursory inquiry by the Department into whether the school district complied with the McKay Scholarship provisions and that the Department had no authority to change a student's matrix of services score. The appellants also argued the circuit court was the only appropriate forum for resolution of the FDUTPA claim.

. See also Fla. Admin. Code R. 6A-6.0970(4)(a) ("A matrix of services developed for purposes of the McKay Scholarship Program shall be consistent with the services described in the student's individual education plan at the time the student withdraws from the public school. The student’s matrix of services may not be changed by the Department and may only be changed by the school district, pursuant to Section 1002.39(5)(b)2.[d]., F.S., to correct a technical, typographical, or calculation error.”).

. Appellants alleged the child’s private school was the Board's only competitor in the “Jacksonville deaf-education industry,” and that the Board had an economic incentive to eliminate competition so that the Board could obtain funding that would otherwise go to the private school in the form of McKay Scholarship funds. That the appellants couch the alleged failure to include all necessary services in the IEP as a deceptive, intentional act by the Board does not excuse their failure to exhaust administrative remedies. The allegations of insufficient services are necessarily a challenge to their child's IEP.

. The IDEA requires that any state or local educational agency that receives assistance under the Act must provide an opportunity for any party to present a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child.” 20 U.S.C. § 1415(b)(6)(A) (emphasis supplied).