# Third District Court of Appeal

## State of Florida

Opinion filed April 14, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-686
Lower Tribunal No. 15-6256
_____

**BJ's Wholesale Club, Inc., and
State of Florida Department of Revenue,**
Appellants,

vs.

**Laura Bugliaro, et al.,**
Appellees.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, William Thomas, Judge.

Foley & Lardner LLP, and James A. McKee (Tallahassee), Kevin A. Reck and Christina M. Kennedy (Orlando), for appellant BJ's Wholesale Club, Inc.; Ashley Moody, Attorney General, and J. Clifton Cox, Special Counsel (Tallahassee), for appellant State of Florida Department of Revenue.

Kluger, Kaplan, Silverman, Katzen and Levine, P.L., and Alan J. Kluger, Steve I. Silverman, and Erin E. Bohannon; VM Diaz & Partners, LLC, and Victor M. Diaz, Jr., for appellees.

Before FERNANDEZ, LOGUE and GORDO, JJ.

LOGUE, J.

BJ's Wholesale Club, Inc. appeals a non-final order granting Laura Bugliaro's motion to certify a (b)(2) class seeking injunctive relief under Rule 1.220 of the Florida Rules of Civil Procedure.

In this case, Bugliaro is challenging the method to determine the taxable sales price of products sold to consumers with discounts funded in part by the merchant and in part by the manufacturer. Bugliaro has brought her challenge as a claim against the merchant to enjoin an unfair trade practice under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), §§ 501.201–.213, Fla. Stat. Both BJ's and the State of Florida Department of Revenue as an intervenor argue that such a challenge must be brought instead against the State under the various administrative and legal avenues established by the Legislature for taxpayers to challenge the collection of sales taxes.

A class should be certified under (b)(2) for an injunction only where an injunction is an available remedy. We conclude, in these circumstances, the taxpayer does not have a cause of action against the merchant for an injunction against an unfair trade practice. Where a merchant has collected and remitted sales taxes to the State in apparent good faith reliance on the

2

tax laws without any improper attempt to obtain a competitive advantage, Florida law provides that the taxpayer must seek its remedy against the State and leave the merchant out of the middle of its tax dispute. For this reason, we reverse the order certifying a (b)(2) class for an injunction.

## FACTS AND PROCEDURAL BACKGROUND

BJ's is a membership-only retail club chain that sells consumer goods. Laura Bugliaro is a Florida resident and a member of BJ's. As part of its membership perks, BJ's offers promotional discounts in the form of "clipless coupons."

The dispute at issue arose during a 2014 Black Friday sales event when Bugliaro purchased two televisions at separate BJ's club stores using coupons provided by BJ's. At the time of purchase, Bugliaro noticed that BJ's assessed Florida sales tax on the original undiscounted price of each television and not on the discounted price.

Bugliaro decided to check how much the televisions would cost on BJ's' online store. There she discovered that BJ's assessed a different sales tax amount on the same television she had purchased at the club store. In its online store, BJ's applied the sales tax to the discounted price of the television and not the full retail price Bugliaro had been charged at the club store.

3

Bugliaro contacted a BJ's district manager to understand the discrepancy in sales tax. The district manager apologized, explained that it was BJ's' policy to charge Florida sales tax on the full, undiscounted retail amount of the product, and offered a one-time courtesy refund of the additional sales tax she had paid at the store. Bugliaro, however, declined the refund and sued BJ's instead.

The problem here stems from a nuance in State sales tax law regarding how to calculate the taxable sales price when a product is discounted. In some circumstances, the discount is funded entirely by the merchant, in which case, the taxable sales price is the discounted price paid by the consumer. In other circumstances, however, the discount is funded by the manufacturer, so that the merchant is reimbursed for the full discount, in which case the taxable sales price is the undiscounted amount. In other cases, the discount is funded in part by the merchant and in part by the manufacturer, known as a "split-funded" discount, which is the type of discount involved here.

The trouble with split-funded discounts arises from the fact that the amount the manufacturer reimburses BJ's may depend on the expected volume of sales of a given product. When split-funded discounts are issued, BJ's is sometimes unaware at the point of sale what portion of the split-

funded promotional discounts will be funded by the manufacturer. Thus, split-funded discounts are typically advertised by BJ's as a single coupon regardless of the ultimate source of funding. The coupons used by Bugliaro were split-funded discounts. BJ's remitted all the sales tax it collected in Bugliaro's transactions to the Department of Revenue.

On March 17, 2015, Bugliaro initially filed a class action against BJ's seeking damages in the form of a tax refund. Bugliaro also sought prospective injunctive and declaratory relief to end BJ's' alleged practice of overcharging sales tax on products purchased with split-funded discounts in violation of FDUTPA and rule 12A-1.018 of Florida's Administrative Code. The Department of Revenue was granted the right to intervene pursuant to Florida Rule of Civil Procedure 1.230 as an interested party because the action involved a sales tax dispute and the Department is statutorily charged with ensuring the "fair and consistent application of the tax laws of this state[.]" § 213.015(21), Fla. Stat. (2015).

On September 9, 2016, Bugliaro moved to certify a rule 1.220(b)(2) class on her injunctive relief claim under FDUTPA. After the trial court certified the class, BJ's appealed. This Court reversed the first certification order because (1) the trial court lacked subject matter jurisdiction since Bugliaro had failed to exhaust her administrative remedies, and (2) the class

was not ascertainable. BJ's Wholesale, Inc. v. Bugliaro, 273 So. 3d 1119, 1121 (Fla. 3d DCA 2019) (Bugliaro I). On remand, Bugliaro filed her fourth amended class action complaint which removed any claim for a refund and sought only prospective injunctive and declaratory relief.

On November 27, 2019, Bugliaro moved for re-certification of the following class for prospective injunctive relief under Count I (FDUTPA):

> All non-tax exempt members of BJ's Wholesale Club who reside in Florida, who will make in-store purchases at one of BJ's 31 Florida stores, and who will purchase products with a discount funded in part by BJ's, within the statutory period(s).

The trial court concluded that Bugliaro "demonstrated by competent, substantial evidence that this action meets all the requirements for class certification under Rule 1.220." The court appointed Bugliaro as class representative and Bugliaro's attorneys as co-lead class counsel. The trial court's order did not set forth an express definition of the class being certified, but Bugliaro contends a definition can easily be inferred.[1] BJ's

---

[1] The class that can be inferred appears to be slightly different from the class requested. The trial court order refers to the class members as including "Florida residents who are non-tax-exempt members of BJ's Florida Wholesale Clubs who will make in-store purchases at BJ's Florida stores and will be subject to BJ's improper imposition and collection of an excessive charge," thus apparently not including the requirement that purchases include a "discount funded in part by BJ's." We are reversing on other grounds but note that the failure to include an express definition of the class has been held to be reversible error. See, e.g., Sonic Automotive, Inc. v. Galura, 961 So. 2d 961, 965 (Fla. 2d DCA 2007).

appealed the certification order and the Department of Revenue joined in the appeal.

## DISCUSSION

*(a) Class certification under (b)(2).*

We have jurisdiction to review the trial court's non-final order certifying a class. See Fla. R. App. P. 9.130(a)(3)(C)(vi). "[A]n appellate court reviews a trial court's grant of class certification for an abuse of discretion." Sosa v. Safeway Premium Fin. Co., 73 So. 3d 91, 102 (Fla. 2011). Of course, that discretion is to be applied within the structure of rule 1.220. Id. at 103. The prerequisites to class certification are well known: numerosity; commonality; typicality; and adequate representation. Fla. R. Civ. P. 1.220(a). In addition to meeting these threshold requirements, the class must fall within one of the three different types of class actions established in rule 1.220(b). Sosa, 73 So. 3d at 106; Porsche Cars N. Am., Inc. v. Diamond, 140 So. 3d 1090, 1095 (Fla. 3d DCA 2014).

Here, the trial court certified a class for injunctive relief under (b)(2). Class certification for an injunction under (b)(2) is appropriate where "the party opposing the class has acted or refused to act on grounds generally applicable to all the members of the class, thereby making final injunctive

7

relief or declaratory relief concerning the class as a whole appropriate." Fla. R. Civ. P. 1.220(b)(2).

We recognize that, at the class certification stage, the inquiry does not focus on whether the class representatives will prevail at trial. Sosa, 73 So. 3d at 105. "Instead, the focus is on whether a litigant's claim is suited for class certification and whether the proposed class provides a superior method for the fair and efficient adjudication of the controversy." Diamond, 140 So. 3d at 1095 (quotations and citation omitted).

Nevertheless, "if consequential to its consideration of whether to certify a class, a trial court may consider evidence on the merits of the case as it applies to the class certification requirements." Sosa, 73 So. 3d at 105. In this regard, where injunctive relief is unavailable, certification of a class under (b)(2) for an injunction is improper. For example, in Alderwoods Group, Inc. v. Garcia, 119 So. 3d 497, 504 (Fla. 3d DCA 2013), this Court reversed a non-final order certifying a (b)(2) class for an injunction when res judicata barred the claim for injunctive relief. Our holding is in line with other authorities on this issue. See Christ v. Beneficial Corp., 547 F.3d 1292, 1298 (11th Cir. 2008) ("Because injunctive relief is not a remedy available under [the Truth in Lending Act] to Christ and the plaintiff class, Rule 23(b)(2) certification under TILA was improper."); Bolin v. Sears, Roebuck & Co., 231

8

F.3d 970, 977 n.39 (5th Cir. 2000) ("Of course, the unavailability of injunctive relief under a statute would automatically make (b)(2) certification an abuse of discretion.").

Thus, the issue becomes whether Bugliaro has a cause of action under FDUTPA against BJ's for an injunction over her claim regarding the method to determine the taxable sales price in these situations involving mixed merchant-manufacturer discounts.

*(b) Calculation of sales taxes involving discounts based on "split-funded" coupons.*

Bugliaro's complaint goes to the heart of an obscure but important point of Florida sales tax law. Florida's revenue laws provide different sales tax treatments depending on the source of funding for discounts taken at the time of sale. For example, a discount based on a coupon issued directly by a merchant or dealer, such as BJ's, reduces the sales price and no sales tax is assessed to the face value of the coupon.[2] In contrast, a manufacturer's coupon, or a refund issued directly by the manufacturer of a product, is not considered a reduction in the selling price and sales tax is charged on the

---

[2] The statutes use the term "dealer" which includes "every person . . . who sells at retail or who offers for sale at retail, or who has in his or her possession for sale at retail; or for use, consumption, or distribution; or for storage to be used or consumed in this state, tangible personal property . . . ." § 212.06(2)(c), Fla. Stat.

9

full retail price of the product. When there exists a problem in determining the extent the manufacturer will be providing a reimbursement for the discount, the sales tax is assessed on the undiscounted price. These points of tax law are specifically addressed in the tax statutes[3] and discussed in the regulations.[4]

Indeed, the Department filed in the lower court a non-binding technical assistance advisement which it contends approves the method of calculating the taxable sales price BJ's used here.[5] We note these matters not to

---

[3] § 212.02(16), Fla. Stat. ("'Sales price'" also includes the full face value of any coupon used by a purchaser to reduce the price paid to a retailer for an item of tangible personal property; where the retailer will be reimbursed for such coupon, in whole or in part, by the manufacturer of the item of tangible personal property; or whenever it is not practicable for the retailer to determine, at the time of sale, the extent to which reimbursement for the coupon will be made.").

[4] Rule 12A-1.018(3), Fla. Admin. Code (giving examples and providing a "coupon or refund issued directly by the manufacturer is not to be construed as a reduction in selling price by the dealer. In this case, as illustrated by the following examples, the full selling price of the product is taxable.").

[5] *Sales Tax - Trade Discounts and Manufacturers Coupons*, Technical Ass't Advm't 95A-011, 1995 WL 476722, at *2, 13 (Fla. Dep't of Revenue 1995) ("The manufacturers and the Company negotiate their coupon arrangements with the intent that the coupons be fully funded, with the exception of an unexpected sales volume, or an instance in which promotional costs are shared . . . . The Department hereby confirms that the Company's current collection and remittance of sales tax on the full face value amount of the vendor-funded coupons . . . is correct.").

10

approve the method BJ's used or the Department's interpretation of the statutes and regulations, but only to underline that the nature of the dispute here concerns the collection and remittance of sales taxes to the State.

*(c) Remedies for the improper collection of sales taxes.*

The Legislature has established numerous ways in which a taxpayer can obtain relief from improperly or illegally assessed sales taxes, including an extensive set of protections under the Taxpayer's Bill of Rights. § 213.015, Fla. Stat.[6] Most importantly, taxpayers can prosecute informal, formal, and legal challenges to taxes and claims for refunds, § 72.011, Fla. Stat. Taxpayers can challenge Department of Revenue regulations and petition to begin rule making, §§ 120.54(7), 120.56, Fla. Stat. They may seek damages that result from the wrongful or negligent act or omission of a department officer or employee, § 213.015(13), Fla. Stat. In establishing

---

[6] The overarching right "guaranteed Florida taxpayers in the Florida Statutes and the departmental rules is "[t]he right to fair and consistent application of the tax laws of this state by the Department of Revenue." § 213.015(21), Fla. Stat. Before paying taxes, taxpayers are entitled to prompt and accurate tax information and assistance and to this end the Department is required to maintain a taxpayer hotline, § 212.185, Fla. Stat.; taxpayers can obtain a technical assistance advisement from the Department of Revenue as to the Department's position on the tax consequences of a particular transaction, § 213.22, Fla. Stat.; and taxpayers can obtain a declaratory statement regarding a state agency's interpretation of a statute or rule, § 120.565, Fla. Stat.

11

these remedies, the Legislature also established limitations and conditions. See, e.g., Bugliaro I, 273 So. 3d at 1121.

*(d) FDUTPA.*

In her complaint, Bugliaro seeks injunctive relief under FDUTPA. Bugliaro contends that BJ's "uniformly imposes and collects from all class members a charge on the full, undiscounted price of taxable products purchased with a discount funded in whole or in part by BJ's." She further asserts that BJ's' practice "constitutes an unfair or deceptive act or practice in trade or commerce" in violation of FDUTPA.

One of the stated purposes of FDUTPA is to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts in the conduct of any trade or commerce." § 501.202(2), Fla. Stat. To that end, FDUTPA makes unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Id. § 501.204(1). The terms "trade or commerce" are broadly defined in the statute[7] and the courts have adopted broad

---

[7] "Trade or commerce" is broadly defined as:
> the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or

12

definitions of the term "unfair trade practice."[8] FDUTPA's provisions are to be "construed liberally to promote" its underlying policies. Id. One of the remedies available under FDUTPA is an injunction.[9]

It is far from clear that the assessment, collection, and remittance of sales tax is an act or practice engaging in "trade or commerce" as that term is used under FDUTPA.[10] Without reaching the issue of whether a

---

commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity.
§ 501.203(8), Fla. Stat.

[8] See Diamond, 140 So. 3d at 1098 (discussing definition of term "unfair trade practice").

[9] Section 501.211, Florida Statutes, provides the following remedies for a violation of FDUTPA:
   (1) Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.

[10] Cf. Montero v. Duval Cnty. Sch. Bd., 153 So. 3d 407, 412 (Fla. 1st DCA 2014) (holding that school board's ministerial act was not an act constituting "trade or commerce" within the meaning of FDUTPA, but rather was required or specifically permitted by state law, thus the trial court correctly construed FDUTPA in dismissing appellants' claim because they did not allege sufficient facts to establish that the school board had engaged in an act constituting "trade or commerce"); Eirman v. Olde Disc. Corp., 697 So. 2d 865, 866 (Fla. 4th DCA 1997) (holding that conduct alleged to be violation of FDUTPA was authorized by rules of United States Securities & Exchange Commission, thus FDUTPA is inapplicable).

merchant's method of collecting sales taxes could ever constitute an unfair trade practice, we conclude that Bugliaro's claim is not the type of dispute intended to be addressed under FDUTPA.

FDUTPA expressly does not apply to an "act or practice required or specifically permitted by federal or state law." § 501.212(1), Fla. Stat. A merchant, such as BJ's, is statutorily required to charge, collect, and remit sales taxes to the Department of Revenue.[11] Sales tax proceeds collected by merchants and remitted to the Department of Revenue "are state funds from the moment of collection." § 213.756(1), Fla. Stat. A merchant is prohibited from absorbing all or any part of the sales tax to be charged and collected at the time of sale, including any portion that "will be refunded either

---

[11] See § 212.07(2), Fla. Stat. ("A dealer shall, as far as practicable, add the amount of the tax imposed under this chapter to the sale price . . . . Except as otherwise specifically provided, any dealer who neglects, fails, or refuses to collect the tax herein provided upon any, every, and all retail sales made by the dealer or the dealer's agents or employees of tangible personal property or services which are subject to the tax imposed by this chapter shall be liable for and pay the tax himself or herself."); see also Gaulden v. Kirk, 47 So. 2d 567, 571 (Fla. 1950) (""[T]he power to enact tax laws is inherent in the state as an attribute or characteristic of government[.]"); Cash v. State, 628 So. 2d 1100, 1101 (Fla. 1993) (noting the tax statutes "make retailers agents of the state by authorizing them to operate and collect and remit the sales tax proceeds to the state").

directly or indirectly by any method whatsoever." § 212.07(4), Fla. Stat.[12] Bugliaro does not allege any facts that might serve to remove BJ's' actions in collecting and remitting the sales taxes at issue from BJ's' statutory responsibilities in this regard. Indeed, in the lower court, Bugliaro conceded that BJ's has no ultimate stake in the outcome of this dispute because it is merely serving as a conduit to collect and remit the taxes at issue.

The Legislature's creation of extensive remedies for improper sales tax collections, with limits on those remedies, indicates the Legislature did not intend normal and routine tax disputes to be resolved in lawsuits under FDUTPA against the merchant. The structure of the law was clearly intended to ensure a consistent, statewide application of the tax laws to all taxpayers across the State. It was also expressly intended to avoid the problem of merchants being caught in the middle of inconsistent demands from

---

[12] Section 212.07(4) specifically provides:

A dealer engaged in any business taxable under this chapter may not advertise or hold out to the public, in any manner, directly or indirectly, that he or she will absorb all or any part of the tax, or that he or she will relieve the purchaser of the payment of all or any part of the tax, or that the tax will not be added to the selling price of the property or services sold or released or, when added, that it or any part thereof will be refunded either directly or indirectly by any method whatsoever.

consumers and the Department.[13] The Legislature's intent that the tax laws be interpreted in a manner that maintains equal and consistent tax treatment statewide is reflected in the laws providing on one hand that the merchant who fails to collect and remit taxes is subject to penalties, fees, and even criminal liability;[14] and, on the other, that the purchaser or consumer remains liable for the sales tax if the merchant fails to charge and collect the proper amount.[15] In this regime of law, it was clearly the intent of the Legislature that routine challenges to the collection and remittance of sales taxes be brought against the State.

Accordingly, because the remedy of an injunction under FDUTPA against the merchant is not available to a taxpayer like Bugliaro in a tax dispute under these circumstances, it was reversible error to certify a (b)(2) class for the purposes of obtaining this unavailable remedy.

---

[13] The tax statutes limit the taxpayer's remedy against a merchant to only a refund of taxes collected that were not remitted to the State. § 213.756, Fla. Stat.

[14] § 212.07(3)(a), Fla. Stat. ("A dealer who fails, neglects, or refuses to collect the tax or fees imposed under this chapter by himself or herself or through the dealer's agents or employees, in addition to the penalty of being liable for paying the tax or fee, commits a misdemeanor of the first degree . . . .").

[15] § 212.07(2), Fla. Stat. ("Such tax shall constitute a part of such price, charge, or proof of sale which shall be a debt from the purchaser or consumer to the dealer, until paid, and shall be recoverable at law in the same manner as other debts.").

Reversed.